DAVIDSON COUNTY v. CITY OF HIGH POINT

No. 8522SC1267

(Filed 7 April 1987)

1. **Counties § 5; Municipal Corporations § 30— sewage treatment facility of city located in county— test for determining controlling zoning**

    In determining whether one governmental entity is subject to another's zoning laws, the governmental-proprietary function test, the power of eminent domain test, and the balancing of public interest test are used as a substitute for discerning legislative intent or as an aid in determining legislative intent; where the legislature has spoken, its statement controls and there is no need to resort to the tests.

2. **Counties § 5; Municipal Corporations §§ 4.4, 30— municipal sewage facility— located in county— not subject to county zoning**

    The City of High Point did not need to comply with Davidson County zoning ordinances in upgrading a sewage treatment facility and providing sewage service to newly-annexed areas of the city where the sewage treatment facility was located in the county and outside the city's boundaries. Although N.C.G.S. § 153A-347 provides that a county's zoning regulations are applicable to the erection, construction, and use of buildings by the State and its political subdivisions, a sewage treatment facility is a complex systematic activity or undertaking greater in scope than a building. In the absence of specific statutory language, a restriction will not be engrafted on N.C.G.S. § 160A-312 which would curtail its broad grant of authority to operate public enterprises by subjecting a public enterprise to a host jurisdiction's zoning regulations. N.C.G.S. § 153A-340.

APPEAL by defendant from *Cornelius, Judge*. Judgment entered 16 September 1985 in Superior Court, DAVIDSON County. Heard in the Court of Appeals 2 June 1986.

*Poyner & Spruill by J. Phil Carlton and Susanne F. Hayes for defendant appellant.*

*Womble, Carlyle, Sandridge and Rice by Roddey M. Ligon, Jr., Gusti W. Frankel; and Davidson County Attorney James F. Mock for plaintiff appellee.*

COZORT, Judge.

The issue presented by this case is whether a city which owns a sewage treatment facility located in a county and outside the city's boundaries must comply with the county's zoning ordinances when upgrading that facility and providing sewage serv-

Davidson County v. City of High Point

ice to newly annexed areas of the city. We hold that the city does not have to comply with the county's zoning requirements.

On 27 May 1983 the City of High Point applied to Davidson County for a special use permit in order to upgrade the Westside High Point Wastewater Treatment Facility (hereinafter "Westside Facility") which is owned by the City of High Point and located outside the city limits in Davidson County. A Davidson County zoning ordinance, adopted 27 July 1981, required High Point to obtain a special use permit from the County Board of Commissioners.

On 4 October 1983, the Davidson County Board of Commissioners issued an order granting a special use permit to High Point for the purpose of expanding the city's Westside Facility. The order subjected the permit to a number of conditions, one of which provides that:

The provision of sewer service to the citizens of Davidson County shall be subject to final approval of the Davidson County Board of Commissioners.

On 5 April 1984, High Point annexed an eight-acre tract located in Davidson County, and on 7 February 1985 High Point, by satellite annexation, annexed a sixty-acre tract of land also located in Davidson County. High Point planned to provide sewer services to the annexed tracts and to use the Westside Facility in the providing of such services; however, High Point planned to make no effort to obtain prior approval from the Davidson County Board of Commissioners.

In a 20 September 1984 letter to the Mayor of High Point, the Chairman of the Davidson County Board of Commissioners stated, among other things:

The Board of Commissioners remains convinced that annexation by High Point into Davidson County will create unique problems to the county and the city. From our perspective, we have questions concerning increased population density; school attendance; school population; school bus transportation; school capital outlay; provision of public water, fire protection and emergency ambulance service. These are items that can severely impact our county budget.

Davidson County v. City of High Point

When the Board of Commissioners reached the decision to issue the special use permit one of the determining factors influencing the decision was the need to upgrade the plant to improve its negative impact to the streams and properties of Davidson County. The Commissioners feel that increased wastewater flow should await the completion of the new plant which will more adequately handle the additional capacity.

Please be advised that annexation of the Ridge property with subsequent provision of sewer would be, in our opinion, a clear violation of the agreed upon conditions of Special Use Permit #2-83-S. Failure to adhere to the conditions set forth in the special use permit can only result in the revocation of the permit. We would hope this situation can be resolved without resorting to such a drastic step. We stand ready to discuss this matter at any time.

On 22 March 1985 Davidson County instituted this action by filing a declaratory judgment action wherein it alleged, among other things:

(a) the defendant's annexation and plans for the provision of sewer services to Davidson County residents using the Westside Wastewater Treatment Facility without the approval of the Davidson County Board of Commissioners violates the conditions upon which the special use permit was issued, and (b) the potential increased population density in the annexed area and the County's responsibility for school capital outlay, provision of public water, public health, social services, emergency ambulance service, adequate road and connector road access in addition to other services to residents of the annexed areas will severely impact on the Davidson County budget, as well as on its exercise of land use controls within its governmental jurisdiction.

Davidson County asked the court to (1) issue an order declaring the 4 October 1983 special use permit issued to High Point valid and binding; and (2) enter an injunction prohibiting High Point (a) from annexing any areas located in Davidson County for which use of the Westside Facility will be made to provide sewer service to the annexed areas, and (b) from using the Westside Facility in providing sewer service to residents of Davidson County in the

annexed areas without prior approval of the Davidson County Board of Commissioners.

On 6 June 1985 High Point filed its answer asserting that the condition of the special use permit (quoted on page 27 above), requiring the Davidson County Board of Commissioner's approval before providing sewer services to the citizens of Davidson County, is outside of the scope of authority of Davidson County to impose. High Point also alleged that this condition is invalid because it does not promote the health, safety, morals, or general welfare of the citizens of Davidson County.

On 22 July 1985 Davidson County moved for summary judgment, which was granted by Superior Court Judge C. Preston Cornelius on 18 September 1985. Judge Cornelius enjoined High Point

> from using the Westside Sewage Treatment Plant to provide sewer services to citizens of Davidson County, whether within or without the City of High Point, without first obtaining the approval of the Davidson County Board of Commissioners.

High Point appealed.

High Point contends that G.S. § 160A-312 gives it the absolute authority, without limitation or restriction, to upgrade its sewage treatment facility and use that facility to provide sewer service to residents of newly annexed areas. G.S. § 160A-312 provides, in pertinent part, that:

> A city shall have authority to acquire, construct, establish, enlarge, improve, maintain, own, operate, and contract for the operation of any or all of the public enterprises as defined in this Article to furnish services to the city and its citizens. Subject to Part 2 of this Article, a city may acquire, construct, establish, enlarge, improve, maintain, own, and operate *any* public enterprise *outside its corporate limits*, within reasonable limitations, but in no case shall a city be held liable for damages to those outside the corporate limits for failure to furnish any public enterprise service.
>
> A city shall have full authority to protect and regulate any public enterprise system belonging to it by adequate and reasonable rules and regulations. [Emphasis added.]

Davidson County relies on G.S. §§ 153A-340 and 153A-347 to support its position that High Point's Westside Facility is subject to Davidson County's zoning regulations. G.S. § 153A-340 allows a county to regulate and restrict, among other things, "(5) [t]he location and use of buildings, structures, and land for trade, industry, residence, or other purposes, except farming." G.S. § 153A-347 provides: "Each provision of this Part is applicable to the erection, construction, and use of buildings by the State of North Carolina and its political subdivisions."

In *Duke Power Co. v. City of High Point*, 69 N.C. App. 335, 336, 317 S.E. 2d 699, 700 (1984), we interpreted the first sentence of G.S. § 160A-312 "as granting the City absolute authority, without limitation or restriction, to extend electric service to its city-owned facilities" outside the city limits; and, in *Duke Power Co. v. City of High Point*, 69 N.C. App. 378, 383, 317 S.E. 2d 701, 704, *disc. rev. denied*, 312 N.C. 82, 321 S.E. 2d 895 (1984), we interpreted the first sentence of G.S. § 160A-312 "as granting the City absolute authority without limitation or restriction to provide electrical service for the benefit of the City itself or its citizens, *i.e.*, those who live within the corporate limits." We further held that the second sentence of G.S. § 160A-312, providing that a city-proposed extension of electrical service outside its corporate limits must be "within reasonable limitations," has no application "where the City proposes to extend service in order to serve itself." *Duke Power v. City of High Point*, 69 N.C. App. at 337, 317 S.E. 2d at 700.

High Point reasons that if a city has, under G.S. § 160A-312, the absolute authority, without limitation or restriction, to extend a public enterprise outside the city limits in order to serve city-owned facilities, that it also has absolute authority, without limitation or restriction, to use a public enterprise located outside the city limits to serve its citizens since, according to G.S. § 160A-312, a city may use a public enterprise "to furnish services to the city *and its citizens*." G.S. § 160A-312 (emphasis added). Davidson County argues, however, that *Duke Power Co. v. High Point*, 69 N.C. App. 335, 317 S.E. 2d 699 (1984), does not control this case since no interpretation of zoning laws was involved there. Rather, Duke Power Co. merely challenged High Point's authority to extend electric lines outside city limits in

order to serve a police academy, a garbage pulverizer plant, and a pollution control plant, all operated and owned by the City.

[1] The first task in deciding whether the county's zoning regulations apply to the city is to determine what test to apply to resolve the issue. While this specific issue is one of first impression in our State, other jurisdictions have faced similar issues, employed a variety of tests, and come up with varying results. *See* Annot., 59 A.L.R. 3d 1244 (1974); Williams, American Land Planning Law, § 81.18, pp. 503-04 (1985); McQuillin Mun. Corp. § 25.15 (3rd ed. 1983); Note: *Municipal Power to Regulate Building Construction and Land Use by Other State Agencies*, 49 Minn. L. Rev. 284 (1964).

One test commonly used to determine whether one governmental entity is subject to another's zoning laws is the "governmental-proprietary function test." Originally used "by the courts in order to impose common law liability on municipal corporations for the negligence of their agents, servants or officers in the execution of corporate [proprietary] powers and duties" by drawing a distinction between governmental and proprietary functions of governmental units, *Askew v. Kopp*, 330 S.W. 2d 882, 890 (Mo. 1960), the test has been adopted by some courts to exempt governmental units from zoning restrictions when acting in their governmental capacity. *See* Annot., *supra; Williams, supra;* McQuillin, *supra;* Note, *supra.*

A second test commonly used to resolve zoning conflicts is the "power of eminent domain test." If the governmental unit seeking immunity from another jurisdiction's zoning laws has been given the *right* to condemn the land for the purpose which it seeks to use the land, then it is generally held that, by virtue of its power of eminent domain, it need not comply with the host jurisdiction's zoning ordinances. *See* Annot., *supra; Williams, supra;* McQuillin, *supra;* Note, *supra.*

A third test now being adopted by a few courts to determine whether one local government unit is subject to another's zoning ordinances is the "balancing of public interests test." This test permits the courts to make "a case by case determination which takes into consideration all of the factors which may properly influence the result." *City of Temple Terrace v. Hillsborough Ass'n for Retarded Citizens, Inc.*, 322 So. 2d 571, 578 (Fla. Dist. Ct. App.

2d 1975), *aff'd*, 332 So. 2d 610 (Fla. 1976). Properly applied, the balancing of public interest test seeks to determine the legislative intent on the zoning immunity issue

> from a consideration of many factors, . . . includ[ing] the nature and scope of the instrumentality seeking immunity, the kind of function or land use involved, the extent of the public interest to be served thereby, the effect local land use regulation would have upon the enterprise concerned and the impact upon legitimate local interests . . . .

*Rutgers, State Univ. v. Piluso*, 60 N.J. 142, 152-53, 286 A. 2d 697, 702 (1972).

Our analysis of the cases and authorities cited reveals that these tests are used as a substitute for discerning legislative intent or as an aid in determining legislative intent. Where the Legislature has spoken on the subject, however, its statement controls and there is no need to resort to the previously mentioned tests. *See City of Temple Terrace v. Hillsborough Ass'n for Retarded Citizens, Inc.*, 322 So. 2d at 578.

Our research reveals no cases in North Carolina that have adopted either the balancing of public interest test or the power of eminent domain test. Only one case in North Carolina has applied the governmental-proprietary function test to resolve a zoning dispute: *McKinney v. City of High Point*, 237 N.C. 66, 74 S.E. 2d 440 (1953).

In *McKinney*, the court was called upon to decide whether High Point was subject to its own zoning ordinances in the erection, maintenance, and operation of a water tank in an area zoned, not for water tanks, but as a "Residence 'A' District." *Id.* at 69, 74 S.E. 2d at 444. The court applied the governmental-proprietary function test and held that "the erection of this water tank was done by the defendant in its governmental capacity and that its zoning ordinances did not apply." *Id.* at 75, 74 S.E. 2d at 446. In so holding, the court reviewed a number of decisions from other jurisdictions which had applied the governmental-proprietary function test, as well as other factors, to zoning related issues.

Without discussing whether a water tank is a "building" within the meaning of then G.S. § 160-181.1, now G.S. § 160A-392, the court noted the statute's recent enactment. The court, how-

ever, found the statute inapplicable since the water tank was under construction when the statute was enacted:

> The General Assembly of North Carolina at its 1951 session enacted Pub. L. Ch. 1203, codified in G.S. as Sec. 160-181.1, which made zoning regulations applicable to the erection and construction of buildings by the State and its political subdivisions. The act became of full force and effect after its ratification 14 April, 1951. This water tank was in construction when this act was passed.

237 N.C. at 74, 74 S.E. 2d at 446. Thus, there was no need for the court to determine whether a water tank was a "building" within the meaning of G.S. § 160-181.1 since the court had found the statute inapplicable because the water tank was already under construction.

The court's citing of G.S. § 160-181.1, however, denotes a recognition that the application of a judicial test, such as the governmental-proprietary function test, is unnecessary when the Legislature has already expressed its intent on the subject. This reasoning is consistent with the views expressed in McQuillin:

> Since the acts of a municipal corporation in any capacity outside its own boundaries ordinarily are based upon express statutory authorization, the applicability of foreign zoning laws to the municipal corporation usually depends upon the statute empowering it to act in the foreign territory, construed in the light of the statute authorizing the pertinent zoning laws.

McQuillin Mun. Corp. § 25.15 (3rd ed. 1983). Thus, the proper test to be applied is legislative intent, and the three tests previously discussed are to be used only as aids, if needed, in discerning legislative intent.

[2] In discerning the Legislature's intent, we begin our inquiry with an analysis of the statutory framework within which the issue must be decided. The Legislature (1) has given municipalities and counties nearly identical powers to enact zoning regulations, (2) made those zoning ordinances applicable to the erection, construction, and use of "buildings" by the State and its political subdivisions, and (3) has given municipalities and counties nearly identical powers to carry on "public enterprises." Therefore, our

statutory analysis includes an examination of zoning and public enterprise statutes as they relate to both cities and counties, as well as other statutes which give both cities and counties similar powers. It is permissible in the interpretation of statutes to consider other statutes related to the particular subject, or to the statutes under construction. *Abernethy v. Board of Comm'rs*, 169 N.C. 631, 86 S.E. 577 (1915).

High Point maintains that G.S. § 160A-312, which provides, in part, that cities have the authority to acquire, construct, establish, enlarge, improve and operate a "public enterprise," gives it the absolute authority, without limitation or restriction, to upgrade its Westside Facility and use that facility to provide sewer service to residents of the newly annexed areas. Davidson County, on the other hand, contends that G.S. § 153A-340, which authorizes counties of this State to enact zoning ordinances, and G.S. § 153A-347, which makes those ordinances applicable to "buildings," erected, constructed, and used by the State and its political subdivisions, empowers the county to enact its special use permit and subject the City of High Point to its restrictions. The county maintains that although the State grants cities authority to acquire, improve, and operate public enterprises, it does not allow cities to avoid compliance with the zoning of the jurisdiction in which the public enterprise is located.

G.S. § 160A-312 gives cities authority to own and operate public enterprises, both within and outside their borders:

§ 160A-312. *Authority to operate public enterprises.*

A city shall have authority to acquire, construct, establish, enlarge, improve, maintain, own, operate, and contract for the operation of any or all of the public enterprises as defined in this Article to furnish services to the city and its citizens. Subject to Part 2 of this Article, a city may acquire, construct, establish, enlarge, improve, maintain, own, and operate any public enterprise outside its corporate limits, within reasonable limitations, but in no case shall a city be held liable for damages to those outside the corporate limits for failure to furnish any public enterprise service.

A city shall have full authority to protect and regulate any public enterprise system belonging to it by adequate and reasonable rules and regulations.

G.S. § 153A-275, likewise gives counties authority to own and operate public enterprises inside and outside their borders:

§ 153A-275. *Authority to operate public enterprises.*

A county may acquire, lease as lessor or lessee, construct, establish, enlarge, improve, extend, maintain, own, operate, and contract for the operation of public enterprises in order to furnish services to the county and its citizens. A county may acquire, construct, establish, enlarge, improve, maintain, own, and operate outside its borders any public enterprise.

A county may by ordinance or resolution adopt adequate and reasonable rules and regulations to protect and regulate a public enterprise belonging to or operated by it.

G.S. § 160A-311 defines the public enterprises a city may conduct within the meaning of G.S. § 160A-312:

§ 160A-311. *Public enterprise defined.*

As used in this Article, the term "public enterprise" includes:

(1) Electric power generation, transmission, and distribution systems;

(2) Water supply and distribution systems;

(3) Sewage collection and disposal systems of all types, including septic tank systems or other on-site collection or disposal facilities or systems;

(4) Gas production, storage, transmission, and distribution systems, where systems shall also include the purchase and/or lease of natural gas fields and natural gas reserves, the purchase of natural gas supplies, and the surveying, drilling and any other activities related to the exploration for natural gas, whether within the State or without;

(5) Public transportation systems;

(6) Solid waste collection and disposal systems and facilities;

(7) Cable television systems;

(8) Off-street parking facilities and systems;

(9) Airports.

G.S. § 153A-274 defines the public enterprises a county may conduct, within the meaning of G.S. § 153A-275:

§ 153A-274. *Public enterprise defined.*

As used in this Article, "public enterprise" includes:

(1) Water supply and distribution systems,

(2) Sewage collection and disposal systems of all types, including septic tank systems or other on-site collection or disposal facilities or systems,

(3) Solid waste collection and disposal systems and facilities,

(4) Airports,

(5) Off-street parking facilities,

(6) Public transportation systems.

The sewage treatment plant in question here is, by definition, a "public enterprise."

G.S. § 153A-340 grants to counties the power to zone and issue special use permits:

§ 153A-340. *Grant of power.*

For the purpose of promoting health, safety, morals, or the general welfare, a county may regulate and restrict

(1) The height, number of stories, and size of buildings and other structures,

(2) The percentage of lots that may be occupied,

(3) The size of yards, courts, and other open spaces,

(4) The density of population, and

(5) The location and use of buildings, structures, and land for trade, industry, residence, or other purposes, except farming.

These regulations may not affect bona fide farms, but any use of farm property for nonfarm purposes is subject to the regulations. The regulations may provide that a board of adjustment may determine and vary their application in harmony with their general purpose and intent and in accordance with general or specific rules therein contained. The regulations may also provide that the board of adjustment or the board of commissioners may issue special use permits or conditional use permits in the classes of cases or situations and in accordance with the principles, conditions, safeguards, and procedures specified therein and may impose reasonable and appropriate conditions and safeguards upon these permits.

G.S. § 160A-381 contains a nearly identical grant of power to cities, except that farming is not exempt from zoning.

G.S. § 153A-347 for counties and G.S. § 160A-392 for cities provide that a county's and city's zoning regulations are "applicable to the erection, construction, and use of *buildings* by the State of North Carolina and its political subdivisions." [Emphasis added.] Counties and cities are political subdivisions of the State. G.S. § 153A-11; G.S. § 160A-11. It is G.S. § 153A-347 upon which Davidson County most heavily relies in support of its argument that High Point is subject to its zoning regulations.

We believe the County's reliance on that statute is misplaced because we find the sewage facility in question was not intended by the Legislature to be included in the "buildings" subject to the County's zoning regulations.

Neither Article 18, Part 3 of Chapter 153A, in which § 347 is found, nor Article 19, Part 3 of Chapter 160A, in which § 392 is found, define "building," and our research reveals no cases which have construed these statutes or their predecessors, G.S. § 153-266.21, enacted in 1959, and G.S. § 160-181.1, enacted in 1951, respectively.

Normally, general statutes do not apply to the State unless the State is specifically mentioned therein. *Yancey v. Highway and Public Works Comm'n*, 222 N.C. 106, 22 S.E. 2d 256 (1942). City and county zoning regulations usually do not apply to the State or any of its agencies or political subdivisions unless the

Legislature has clearly manifested a contrary intent. McQuillin Mun. Corp. § 25.15 (3rd ed. 1983).

"In construing a statute, its 'words are to be given their plain and ordinary meaning unless the context, or the history of the statute, requires otherwise.' *State v. Wiggins*, 272 N.C. 147, 153, 158 S.E. 2d 37, 42 (1967), *cert. denied*, 390 U.S. 1028, 20 L.Ed. 2d 285, 88 S.Ct. 1418 (1968)." *State v. Felts*, 79 N.C. App. 205, 208, 339 S.E. 2d 99, 101, *disc. rev. denied*, 316 N.C. 555, 344 S.E. 2d 11 (1986). Likewise, "[w]hen a statute's language is clear and unambiguous, it must be given effect, and its clear meaning may not be evaded by the courts under the guise of construction." *Id.* at 208-09, 339 S.E. 2d at 101 (citations omitted). A "building," in its ordinary sense, is defined as a "[s]tructure designed for habitation, shelter, storage, trade, manufacture, religion, business, education, and the like. A structure or edifice inclosing a space within its walls, and usually, but not necessarily, covered with a roof." Black's Law Dictionary 176 (5th ed. 1979).

The phrase "public enterprise" is not specifically defined in either Article 15, Part 1 of Chapter 153A, in which G.S. § 153A-274 is found, or in Article 16, Part 1 of Chapter 160A, in which G.S. § 160A-311 is found. Giving the word "enterprise," its common ordinary meaning, "enterprise" denotes a complex undertaking or activity, a system. Webster's Third New International Dictionary 757 (1971) defines "enterprise" as a "venture, undertaking, project; . . . an undertaking that is difficult, complicated . . .; any systematic purposeful activity or type of activity . . . ." It follows, therefore, that a public enterprise is any complex systematic purposeful activity or type of activity that is conducted for a public purpose or benefit. A city or county has the authority to conduct a public enterprise if it is listed in G.S. § 160A-311 and G.S. § 153A-274, respectively. Thus, a public enterprise denotes a complex systematic activity or undertaking—something greater in scope than a building.

That a public enterprise denotes something greater in scope than a building is supported by the nature and description of those things defined as a public enterprise in G.S. § 160A-311 and G.S. § 153A-274. With the exception of an airport, which is given its own definition in G.S. § 63-1(8), the words "system" and/or "facility" are used to help describe each particular public enter-

prise. "System" is defined as "a complex unity formed of many often diverse parts subject to a common plan or serving a common purpose." Webster's Third New International Dictionary 2322 (1971). "Facility" is defined as "something . . . that is built, constructed, installed, or established to perform some particular function or to serve or facilitate some particular end." *Id.* at 812-13. Thus, we hold that the word "building" as used in G.S. § 153A-374 does not encompass a "public enterprise."

G.S. § 153A-340, the county zoning enabling statute, upon which Davidson County also relies, is a general grant of zoning power, and does not specifically give counties the authority to regulate another jurisdiction's public enterprises located within its borders. G.S. § 153A-340 gives the county the authority to "regulate and restrict . . . (5) [t]he location and use of buildings, structures, and land for trade, industry, residence, or other purposes, except farming." [Emphasis added.] While our research reveals no North Carolina appellate decision which construes the underlined language, at least one other jurisdiction has construed identical language in a case with an issue similar to the one we have here. In *Askew v. Kopp*, 330 S.W. 2d 882 (Mo. 1960), the court was called upon to decide whether a city in providing for a sewage disposal plant was subject to county zoning regulations. The court construed a zoning enabling statute with language identical to the above-underlined portion of G.S. § 153A-340. Applying the *ejusdem generis* (of the same kind, class, or nature) canon of statutory construction, and prior precedent, the court held

> that the words "trade, industry, residence or other purposes" contained in § 64.090, which are words of general inclusion, relate to private property uses and should not be construed to include the state or its political subdivisions, in such a manner as to encroach upon its sovereign power of eminent domain. *The state and its agencies are not within the purview of a statute unless an intention to include them is clearly manifest, especially where prerogatives, rights, titles or interests of the state would be divested or diminished.* *Hayes v. City of Kansas City*, 362 Mo. 368, 241 S.W. 2d 888.

*Askew v. Kopp*, 330 S.W. 2d at 888. We find this rule of statutory construction applicable and the court's reasoning in *Askew v. Kopp* persuasive. Accordingly, we hold that the phrase, "trade, in-

dustry, residence, or *other purposes*" as used in G.S. § 153A-340 relates to private property and the phrase "other purposes" is not to be broadened to include the use of land by a municipality for a public enterprise listed in G.S. § 160A-311. This holding is consistent with (1) the legal principle that city and county zoning regulations usually do not apply to the State or any of its agencies or political subdivisions unless the Legislature has clearly manifested a contrary intent, McQuillin Mun. Corp. § 25.15 (3rd ed. 1983); and (2) our own rule of statutory construction that "when particular and specific words or acts, the subject of a statute, are followed by general words, the latter must as a rule be confined to acts and things of the same kind." *State v. Craig*, 176 N.C. 740, 744, 97 S.E. 400, 401 (1918).

That the Legislature recognizes a distinction between a public enterprise and a "building," as that word is used in G.S. § 153A-347, is also supported by our eminent domain statutes: G.S. § 40A-1, *et seq.* In our eminent domain statutes the Legislature recognizes a distinction between a public enterprise and a building by setting them off in separate subsections of the same section. G.S. § 40A-3(b) provides that:

> For the public use or benefit, the governing body of each municipality or county shall possess the power of eminent domain and may acquire by purchase, gift or condemnation any property, *either inside or outside its boundaries*, for the following purposes.
>
> \* \* \* \*
>
> (2) Establishing, extending, enlarging, or improving any of the public enterprises listed in G.S. 160A-311 for cities, or G.S. 153A-274 for counties.
>
> \* \* \* \*
>
> (6) Constructing, enlarging, or improving city halls, fire stations, office buildings, courthouse jails and other buildings for use by any department, board, commission or agency.

Thus, while it appears that municipalities or counties may exercise the power of eminent domain for the construction, enlarging or improving of those buildings listed in G.S. § 40A-3(b)(6), the power of eminent domain does not include locating a particular

*building* in violation of another jurisdiction's zoning laws by virtue of the fact that through G.S. § 153A-347 and G.S. § 160A-392 the Legislature has made zoning regulations with regard to buildings specifically applicable to political subdivisions. The same zoning restrictions do not apply, however, to the construction, establishment, enlargement, improvement, maintenance, ownership or operation of a *public enterprise* unless the Legislature has clearly manifested a contrary intent. McQuillin, *supra.* The Legislature has not manifested an intent to subject one political subdivision's public enterprise to another political subdivision's zoning restrictions when the public enterprise is located within the territory of the zoning political subdivision. Had our Legislature intended to subject a public enterprise to the host jurisdiction's zoning regulations, it could have easily inserted the term "public enterprise" into G.S. § 153-347 and G.S. § 160A-392. This it did not do.

By the broad language the Legislature has used in G.S. § 160A-312 and G.S. § 153A-275 it has evidenced its intent to give cities and counties comprehensive authority to own and operate public enterprises outside their boundaries with respect to the service of themselves and their citizens. We have construed the broad language of G.S. § 160A-312 as granting a city the absolute authority, without limitation or restriction, to establish and conduct a public enterprise for itself and its citizens. *See Duke Power Co. v. City of High Point*, 69 N.C. App. 335, 317 S.E. 2d 699; *Duke Power Co. v. High Point*, 69 N.C. App. 378, 317 S.E. 2d 701. In the absence of specific statutory language we will not engraft upon G.S. § 160-312 a restriction which would curtail its broad grant of authority by subjecting a public enterprise to a host jurisdiction's zoning regulations.

Our Legislature has not seen fit to curtail the broad grant of authority it has given cities and counties in G.S. §§ 160A-312 and 153A-275, respectively, by blanketly subjecting public enterprises to a host jurisdiction's zoning regulations. Rather, when in its judgment it has deemed it necessary to restrict one political subdivision's ability to establish a particular type of public enterprise in another political subdivision the Legislature has enacted a statute to accomplish that specific goal. *See* G.S. § 153A-292 which limits a county's establishment and operation of solid waste

collection and disposal facilities to areas *outside of incorporated cities and towns.*

Accordingly, we hold that High Point need not comply with Davidson County's zoning ordinances in upgrading its Westside Facility and providing sewage service to newly annexed areas of High Point with that facility.

The order of the trial court is

Reversed and the cause is remanded to the trial court for entry of judgment for defendant.

Chief Judge HEDRICK and Judge EAGLES concur.