NASH-ROCKY MOUNT BOARD OF EDUCATION, Petitioner v. THE ROCKY MOUNT BOARD OF ADJUSTMENT, Respondent

No. COA04-290

(Filed 5 April 2005)

**Zoning— parking lot—special use permit—local ordinance— statutory authority exceeded**

A parking lot is not a building under the applicable version of N.C.G.S. § 160A-392, and the Board of Adjustment lacked jurisdiction to issue or deny a special use permit for a parking lot for school buses. The pre-amendment version of the statute referred to the use of buildings; while the Board of Adjustment argues that the Rocky Mount ordinance defines "building" to include "parking area," that ordinance is not applicable unless Rocky Mount has authority under the statute (a local entity cannot define the scope of a grant of authority from the General Assembly). The plain meaning of "building" in the statute did not include parking lots.

Appeal by respondent from judgment entered 7 November 2003 by Judge J. Richard Parker in Nash County Superior Court. Heard in the Court of Appeals 4 November 2004.

*Valentine, Adams & Lamar, L.L.P., by L. Wardlaw Lamar and Lewis W. Lamar, Jr., for petitioner-appellee.*

*Hoyle & Stroud, L.L.P., by William S. Hoyle and Philip A. Lane, for respondent-appellant.*

GEER, Judge.

Respondent Rocky Mount Board of Adjustment ("Board of Adjustment") appeals from the judgment of the trial court reversing the Board of Adjustment's decision to deny a special use permit to the Nash-Rocky Mount Board of Education for a school bus parking lot. Because we agree with the trial court that the Board of Adjustment lacked jurisdiction over the parking lot, we affirm.

Factual Background

In 2002, the Nash-Rocky Mount Board of Education ("the School Board") contacted the City of Rocky Mount about adding a parking lot for school buses at Rocky Mount Senior High School. The parking lot was necessary because of an increased number of buses at the

high school due to pupil reassignment and the need to relocate other schools' buses due to vandalism at those schools. The Rocky Mount Zoning Board told the School Board that it would need two permits: a driveway permit and a fence permit. Once it had obtained the permits, the School Board constructed the parking lot using a crushed gravel base with a chain link fence around the exterior.

Rocky Mount Senior High School is located next to residential neighborhoods. After the parking lot went into use, local residents began complaining of noise, dust, traffic congestion, and trash. In response to the complaints, the City of Rocky Mount informed the School Board that it would need to obtain a special use permit from the Board of Adjustment in order to continue operation of the parking lot.

The Board of Adjustment conducted a hearing on the School Board's request for a special use permit. Based on the testimony of two residents living near the parking lot, the Board of Adjustment concluded that the location of the school bus parking lot would adversely affect the surrounding properties and it would endanger the public health, safety, or general welfare of the neighborhood. For these reasons, the Board denied the request for a special use permit.

The School Board filed a petition for writ of certiorari with the Nash County Superior Court, which the court allowed. The trial court concluded that the Board of Adjustment lacked jurisdiction over the School Board's parking lot and, therefore, reversed the Board of Adjustment's decision and "remanded to the Board of Adjustment for the issuance to the Nash-Rocky Mount Board of Education of a special use permit for its school bus parking lot forthwith." The Board of Adjustment filed a timely appeal.

## Discussion

Although "[t]he original zoning power of the State reposes in the General Assembly[,] [i]t has delegated this power to the 'legislative body' of municipal corporations." *Allred v. City of Raleigh,* 277 N.C. 530, 540, 178 S.E.2d 432, 437 (1971) (internal citation omitted). N.C. Gen. Stat. § 160A-381(a) (2003) sets out the authority of cities and towns to engage in zoning:

For the purpose of promoting health, safety, morals, or the general welfare of the community, any city may regulate and restrict the height, number of stories and size of buildings and other

structures, the percentage of lots that may be occupied, the size of yards, courts and other open spaces, the density of population; and the location and use of buildings, structures and land for trade, industry, residence or other purposes . . . .

Generally, municipal zoning regulations do not apply to the State or its political subdivisions unless the legislature has clearly expressed a contrary intent. *Davidson County v. City of High Point*, 85 N.C. App. 26, 37-38, 354 S.E.2d 280, 286, *modified on other grounds*, 321 N.C. 252, 362 S.E.2d 553 (1987). In North Carolina, the General Assembly has determined that a city or town may exercise its zoning power as to other governmental entities in the limited circumstances set forth in N.C. Gen. Stat. § 160A-392 (2003) (emphasis added): "All of the provisions of this Part [relating to zoning by cities and towns] are hereby made applicable to the *erection, construction, and use of buildings* by the State of North Carolina and its political subdivisions."[1]

The question presented by this case is, therefore, whether the parking lot located at Rocky Mount Senior High School falls within the grant of zoning power contained in N.C. Gen. Stat. § 160A-392. As the Supreme Court stated in *Allred*, 277 N.C. at 540, 178 S.E.2d at 437-38, "[t]he power to zone, conferred upon the 'legislative body' of a municipality, is subject to the limitations of the enabling act." *See also Heaton v. City of Charlotte*, 277 N.C. 506, 513, 178 S.E.2d 352, 356 (1971) ("A municipality has no inherent power to zone its territory and possesses only such power to zone as is delegated to it by the enabling statutes."). Accordingly, if the parking lot comes within the terms of N.C. Gen. Stat. § 160A-392, then the Board of Adjustment has jurisdiction to issue or deny a special use permit, but if the parking lot is outside the scope of the statute, then the Board of Adjustment has no jurisdiction over the parking lot. In making this determination, we note that "[s]tatutorily granted powers are to be strictly construed." *Davidson County*, 321 N.C. at 257, 362 S.E.2d at 557.

As both parties have agreed, the question whether the Board of Adjustment has jurisdiction in this case is determined by whether the parking lot is considered either a "building" or a "use of a build-

---

1. After the decision rendered by the Board of Adjustment in this case, N.C. Gen. Stat. § 160A-392 was amended, effective 1 October 2004, to read as follows: "All of the provisions of this Part are hereby made applicable to the erection, construction, and use of buildings *and land* by the State of North Carolina and its political subdivisions." (Emphasis added.)

ing" under the statute. We hold that the parking lot falls into nei-
ther category.

With respect to the definition of a "building," the Board of
Adjustment first argues that it has jurisdiction because the Rocky
Mount Zoning Ordinance defines the word "building" to include a
"parking area." This argument places the cart before the horse. The
Rocky Mount Zoning Ordinance (and its definitions) cannot become
applicable until after a determination that Rocky Mount had the
authority to zone with respect to the parking lot under N.C. Gen. Stat.
§ 160A-392. A local entity cannot define the scope of the authority
granted to it by the General Assembly. *See Davidson County*, 321 N.C.
at 259, 362 S.E.2d at 558 ("In short, the County may not use [a condi-
tion to issuance of a permit] to impose limitations outside the scope
of its statutory authority.").

We must determine whether *the General Assembly* intended to
include a parking lot within the scope of the word "building." "It is
elementary that in the construction of a statute words are to be given
their plain and ordinary meaning unless the context, or the history of
the statute, requires otherwise." *State v. Wiggins*, 272 N.C. 147, 153,
158 S.E.2d 37, 42 (1967), *cert. denied*, 390 U.S. 1028, 20 L. Ed. 2d 285,
88 S. Ct. 1418 (1968).

In *Davidson County*, 85 N.C. App. at 38, 354 S.E.2d at 286,
this Court construed the word "building" as used in N.C. Gen. Stat.
§ 138A-347 (2003)—a statute identical to N.C. Gen. Stat. § 160A-392
with the exception that it applies to counties and not cities.[2] Ex-
cept for *Davidson County*, we can find no other case that has defined
"building" as that term is used in North Carolina's zoning statutes.
This Court in *Davidson County* found a "building" to be a:

> "[s]tructure designed for habitation, shelter, storage, trade, man-
> ufacture, religion, business, education, and the like. A structure
> or edifice inclosing a space within its walls, and usually, but not
> necessarily, covered with a roof."

*Id.*, 354 S.E.2d at 287 (quoting *Black's Law Dictionary* 176 (5th
ed. 1979)).

_____

2. Although the Supreme Court affirmed the result of the decision of this Court
on different grounds, it "express[ed] no opinion as to the correctness of the Court of
Appeals' conclusion" regarding the proper construction of the zoning statutes.
*Davidson County*, 321 N.C. at 256, 362 S.E.2d at 556.

The dictionary definition of "building" is:

> a constructed edifice designed to stand more or less permanently, covering a space of land, usu. covered by a roof and more or less completely enclosed by walls, and serving as a dwelling, storehouse, factory, shelter for animals, or other useful structure—distinguished from structures not designed for occupancy (as fences or monuments) and from structures not intended for use in one place (as boats or trailers) even though subject to occupancy.

*Webster's Third New Int'l Dictionary* 292 (1968). *See also Black's Law Dictionary* 207 (8th ed. 2004) (defining "building" as "[a] structure with walls and a roof, esp. a permanent structure").

No matter whether we use the definition of "building" adopted by the court in *Davidson County* or the dictionary definition, it is apparent that the plain meaning of the word "building" does not encompass a parking lot. A parking lot is not a structure; it has no roof, walls, or any other kind of permanent, immovable features apart from a fence. Put simply, a parking lot is an open air space used to temporarily park automobiles and buses. It in no way resembles a building. *See* David W. Owens, *Legislative Zoning Decisions: Legal Aspects* 253 n.63 (2nd ed. 1999) ("In some limited circumstances zoning does not affect a city, county, or state government use. For example, because a 'building' is required to trigger application of zoning, and given that 'land uses' per se are not covered, an open-air use of land without a building would not be subject to local zoning. A landfill or parking area might fit this situation.").

The Board of Adjustment argues alternatively that since a parking lot is necessary in order to use the school, the parking lot falls within the "use of buildings" language contained in N.C. Gen. Stat. § 160A-392. The Board of Adjustment asserts that the zoning provisions apply to more than just actual physical structures owned by the State. It argues that the phrase "use of buildings" means that the surrounding land used in conjunction with the actual building is also covered in the grant of jurisdictional power in the zoning act. According to the Board of Adjustment, since the parking lot is land adjoining the school building and is necessary for the School Board to fully use that building, the parking lot falls under the jurisdictional grant in N.C. Gen. Stat. § 160A-392. We disagree.

"In matters of statutory construction, our primary task is to ensure that the purpose of the legislature, the legislative intent, is

accomplished." *Elec. Supply Co. v. Swain Elec. Co.*, 328 N.C. 651, 656, 403 S.E.2d 291, 294 (1991). Although we have found no North Carolina decision addressing the meaning of the word "use" within zoning statutes, the South Carolina Court of Appeals has addressed precisely that issue and observed: "As it is conventionally applied, the term 'use' is the purpose or activity for which land or buildings are designed, arranged, or intended, or for which land or buildings are occupied or maintained." *Heilker v. Zoning Bd. of Appeals*, 346 S.C. 401, 407, 552 S.E.2d 42, 45 (S.C. Ct. App. 2001) (internal quotation marks omitted). *See also* 83 Am. Jur. 2d *Zoning and Planning* § 156 (2003) ("The term 'use' as employed in the context of zoning, is generally described as a word of art denoting the purpose for which a parcel of land or building is utilized."); Owens, *supra*, at 8 ("Every [zoning] ordinance is different: each local government decides how many zoning districts it wants, what to call them, *what uses to allow*, and what special procedures to include." (emphasis added)).

A review of North Carolina's zoning statutes supports our conclusion that the General Assembly intended the word "use" in the conventional zoning sense: as relating to the purpose for which the building was constructed. *See Brown v. Flowe*, 349 N.C. 520, 523-24, 507 S.E.2d 894, 896 (1998) ("When multiple statutes address a single subject, this Court construes them *in pari materia* to determine and effectuate the legislative intent."). The initial grant of power in N.C. Gen. Stat. § 160A-381(a) permits regulation of the "use of buildings, structures and land for trade, industry, residence or other purposes." N.C. Gen. Stat. § 160A-382 (2003) provides that, in exercising that power, the city may divide its territorial jurisdiction into districts and, among other things, regulate the "use of buildings, structures, or land." The section then specifies:

> Such districts may include, but shall not be limited to, *general use districts, in which a variety of uses are permissible* in accordance with general standards; overlay districts, in which additional requirements are imposed on certain properties within one or more underlying general or special use districts; and *special use districts or conditional use districts, in which uses are permitted only upon the issuance of a special use permit or a conditional use permit.*

(Emphasis added.) In these sections, "use" can only mean "purpose." Similarly, in the remedy section, N.C. Gen. Stat. § 160A-389 (2003), the city is authorized "to prevent any illegal act, conduct, business or use in or about the premises," suggesting that "use" refers to a particular

activity. In sum, these provisions indicate an intent to permit zoning regulation of the purpose or activity for which a building, structure, or land is being utilized—in other words, the conventional meaning of the word "use" when dealing with zoning statutes. N.C. Gen. Stat. § 160A-392 should be construed consistently.

Accordingly, N.C. Gen. Stat. § 160A-392 permits a municipality to regulate the purpose for which the State or other political subdivision utilizes a building. As in effect at the time of the underlying events, the statute did not give the municipality jurisdiction to regulate land simply because it was utilized in connection with the building. *See also Davidson County*, 321 N.C. at 257, 362 S.E.2d at 557 ("A county has the power to impose reasonable zoning requirements *on buildings* operated by certain other governmental units within its boundaries." (emphasis added)).

Defendant relies upon *Yancey v. Heafner*, 268 N.C. 263, 150 S.E.2d 440 (1966) to support its theory that zoning regulations should not be limited simply to the buildings themselves. *Yancey*, however, addressed the question whether a Board of Adjustment properly granted a *building permit* for the construction of a 4,000 foot stadium. *Id.* at 265, 150 S.E.2d at 442. *Yancey* does not consider whether a municipality has jurisdiction to zone government-owned land apart from buildings.

Therefore, because the parking lot is not a "building" under the applicable version of N.C. Gen. Stat. § 160A-392, we hold that the Board of Adjustment lacked jurisdiction to issue or deny a special use permit concerning that land and affirm that portion of the trial court's order. The trial court, however, also "remanded to the Board of Adjustment for the issuance to the Nash-Rocky Mount Board of Education of a special use permit for its school bus parking lot forthwith." Since the Board of Adjustment had no authority over the parking lot, there is no need for issuance of a special use permit. That portion of the order of the trial court directing the issuance of a special use permit is, therefore, reversed. The remaining portion of the trial court's order is affirmed.

Affirmed in part and reversed in part.

Judges TIMMONS-GOODSON and TYSON concur.