SOUTHPARK MALL LIMITED PARTNERSHIP, Plaintiff v. CLT FOOD MANAGEMENT, INC., and FLAMER'S OF SOUTHPARK, INC., Defendants

No. COA00-246

(Filed 3 April 2001)

**Landlord and Tenant— summary ejectment—commercial lease**

The trial court did not err by its entry of summary ejectment in favor of plaintiff based on defendants' failure to pay rent within five days after notice as contained in section 24.1 of the commercial lease, because: (1) the plain and ordinary meaning of the lease language unambiguously required defendants to cure the default within five calendar days of plaintiff's 2 July 1999 notice letter; (2) defendants failed to cite any precedent from this state holding that the term "days" in a lease agreement is ambiguous as a matter of law or that the word should be construed beyond its ordinary usage to mean "business days;" (3) defendants failed to show any evidence that the parties to the lease intended the word "days" to mean "business days;" and (4) even if the lease was construed to mean "business days," the payment was still untimely.

Appeal by defendants from judgment entered 17 December 1999 by Judge Fritz Y. Mercer in Mecklenburg County District Court. Heard in the Court of Appeals 22 February 2001.

*Robinson, Bradshaw & Hinson, P.A., by Douglas M. Jarrell, for plaintiff-appellee.*

*Parker, Poe, Adams & Bernstein, L.L.P., by John W. Francisco; John T. Daniel, for defendants-appellants.*

TYSON, Judge.

Defendants, CLT Food Management, Inc. ("CLT") and Flamer's of Southpark, Inc. ("Flamer's") (collectively "defendants"), appeal the trial court's entry of judgment awarding plaintiff, Southpark Mall Limited Partnership ("Southpark"), possession of the premises at issue. We affirm the trial court's order for the reasons stated below.

Southpark owns Southpark Mall, a shopping complex in Charlotte, North Carolina. On 28 January 1992, Southpark's predecessor-in-interest executed a written lease agreement ("the lease") with Flamer's. The lease provided Flamer's with space in Southpark Mall's food court for operation of a fast-food restaurant. Flamer's subleased the premises to CLT with landlord's consent in September 1993. Flamer's remained liable under the lease in the event of default by CLT.

The lease required CLT to make monthly rental payments to Southpark on the first day of each month. Section 24.1 of the lease addressed CLT's ability to cure a default, and Southpark's remedy for CLT's failure to cure:

> If at any time Tenant shall fail to remedy any default in the payment of any amount due and payable under this lease <u>for five (5) days after notice</u> . . . then in any such event Landlord may, at Landlord's option and without limiting Landlord in the exercise of any other right or remedy Landlord may have on account of such default, and without any further demand or notice . . . terminate this lease by giving Tenant written notice of its election to do so, as of a specified date not less than thirty (30) days after the date of giving such notice.

(emphasis supplied). The lease further provided that any notice required by the lease "shall be deemed to have been given, made or communicated, as the case may be, on the date the same was deposited in the United States mail . . . ."

CLT defaulted under the lease by failing to pay the rent due 1 July 1999. On 2 July 1999, Southpark sent a letter by certified mail to CLT

giving notice of the default. The letter stated that if Southpark did not receive CLT's rent payment "within five (5) days after the date of this notice," it could terminate the lease "without giving tenant any further notice or opportunity to cure such default." CLT received the notice on 6 July 1999.

CLT did not cure its default on 7 July 1999, within five days of Southpark's 2 July 1999 notice letter. CLT did pay July rent to Southpark on 9 July 1999, seven days after notice of the default. On 12 July 1999, Southpark notified CLT and Flamer's that the lease terminated effective 31 August 1999, due to CLT's failure to timely cure its 1 July 1999 default. CLT refused to vacate the premises at Southpark Mall, and became a holdover tenant.

On 8 September 1999, Southpark filed a Complaint in Summary Ejectment against CLT and Flamer's, seeking immediate possession of the leased premises. The matter was heard at a non-jury trial on 6 December 1999. On 17 December 1999, the trial court entered judgment in favor of Southpark. The trial court found that Section 24.1 of the lease unambiguously required that CLT remedy any default "within five days after notice." The trial court found that CLT failed to timely pay its monthly rent on 1 July 1999, and that Southpark notified CLT of the default on 2 July 1999. The trial court concluded that CLT defaulted under the lease, and that it failed to cure its default by 7 July 1999, as required by the lease. The trial court entered an order of ejectment awarding Southpark immediate possession of the premises. CLT and Flamer's appeal.

---

CLT and Flamer's assign error to the trial court's entry of summary ejectment in favor of Southpark. Defendants concede that CLT defaulted under the lease by failing to pay rent on 1 July 1999. They also concede that Southpark gave notice of the default effective 2 July 1999, as provided by the lease. *See Main Street Shops, Inc. v. Esquire Collections, Ltd.*, 115 N.C. App. 510, 515, 445 S.E.2d 420, 422-23 (1994) (where lease itself provides that notice is effective upon deposit in the mail, "[b]y the very terms of the lease, therefore, notification is accomplished once an appropriate writing is addressed and deposited in the mail as specified; neither receipt nor proof of receipt are required.").

Defendants argue that the phrase "five (5) days after notice" contained in section 24.1 of the lease is ambiguous, and therefore must be construed in favor of CLT and Flamer's. Defendants assert that the

phrase should be construed as "business days," and that CLT's 9 July 1999 payment timely cured the default within five business days. We disagree, and affirm the trial court's entry of judgment and order of ejectment.

Where the language of a contract is clear, the contract must be interpreted as written. *Howard v. Oakwood Homes Corp.*, 134 N.C. App. 116, 120, 516 S.E.2d 879, 882, *disc. review denied*, 350 N.C. 832, 539 S.E.2d 288 (1999), *cert. denied*, 120 S. Ct. 1161, 145 L. Ed.2d 1072 (2000) (citation omitted). As with contracts, the rule of interpretation for leases is that a word in a lease "should be given its natural and ordinary meaning." *Charlotte Housing Authority v. Fleming*, 123 N.C. App. 511, 514, 473 S.E.2d 373, 375 (1996) (citation omitted).

In *Charlotte Housing Authority*, we noted that where a non-technical word is not defined in a lease, we must interpret the word consistent with its plain dictionary meaning:

> The word 'guest' is not defined in Ms. Fleming's lease; accordingly, it should be given its natural and ordinary meaning. *See, Martin v. Ray Lackey Enterprises*, 100 N.C. App. 349, 354, 396 S.E.2d 327, 331 (1990) (holding that the rules governing interpretation of a lease are the same as those governing interpretation of a contract); *E.L. Scott Roofing Co. v. State of N.C.*, 82 N.C. App. 216, 223, 346 S.E.2d 515, 520 (1986) (holding that when a term is not defined in a contract, the presumption is that the term is to be given its ordinary meaning and significance).

*Id.* We noted that Webster's Third New International Dictionary defines " 'guest' " as " 'a person to whom hospitality is extended, . . . one invited *to participate in some activity at the expense of* another.' " *Id.* (citation omitted). Thus, where the party at issue was not on the leased premises by way of invitation, he was not a "guest" as contemplated by the lease. *Id.* at 515, 473 S.E.2d at 376; *see also, IRT Property Co. v. Papagayo, Inc.*, 338 N.C. 293, 296, 449 S.E.2d 459, 461 (1993), (non-technical words in a lease must be interpreted consistent with ordinary meaning).

Black's Law Dictionary defines "day" as "[a]ny 24-hour period; the time it takes the earth to revolve once on its axis." Black's Law Dictionary 402 (7th ed. 1999). The American Heritage College Dictionary defines "day" as "[t]he period of light between one dawn and nightfall; the interval from sunrise to sunset." The American Heritage College Dictionary 354 (3d ed. 1997). The plain meaning of

"day" does not encompass anything more than the regular passage of twenty-four hours. Its ordinary meaning does not convey any information as to when the average business is open for operation.

Defendants failed to cite any precedent from this State holding that the term "days" in a lease agreement is ambiguous as a matter of law, or that the word should be construed beyond its ordinary usage to mean "business days." Defendants have also failed to show any evidence that the parties to the lease intended the word "days" to mean "business days." Hassan Aris, CLT's Business Manager, was defendants' sole witness at trial. Aris testified that he "understood that [he] had to deliver [the rent] check by July 7," and that delivery on that date "was required under the lease."

"When the language of a contract is plain and unambiguous, its construction is a matter of law for the court." *Marsh Realty Co. v. 2420 Roswell Ave.*, 90 N.C. App. 573, 576, 369 S.E.2d 113, 115 (1988) (citing *DeTorre v. Shell Oil Co.*, 84 N.C. App. 501, 353 S.E.2d 269 (1987)). We hold, consistent with the plain and ordinary meaning of the lease language, that section 24.1 of the lease unambiguously required defendants to cure CLT's default within five calendar days of Southpark's 2 July 1999 notice letter.

Assuming, *arguendo*, that the lease were construed to mean "business days," CLT's 9 July 1999 payment was untimely. Southpark Mall was open for business from Friday, 2 July 1999, through Wednesday, 7 July 1999, five "business" days following Southpark's notice of default.

Southpark's letter, mailed 2 July 1999, did not specifically state that CLT's July rent must be received by 7 July 1999. Defendants argue that Southpark's letter did not give CLT proper notice of when a cure was due. This argument is unpersuasive. Southpark's letter unambiguously stated that if Southpark did not receive CLT's payment "within (5) days after the date of this notice," Southpark could terminate the lease "without giving tenant any further notice or opportunity to cure such default." If CLT was confused by Southpark's notice letter, CLT could have consulted the lease provisions to determine the period for curing a default.

Defendants attempt to justify CLT's failure to cure the default prior to 9 July 1999 by stating that, "[w]hen a representative of CLT received the Notice Letter on Tuesday, July 6, 1999, he believed that he had five 'business days' from the date of the Notice Letter (or until

July 9, 1999) to cure the default." CLT further argues as excuse that it could not prepare Southpark's rent check until 9 July 1999 "because its bookkeeper was out of the office until that date." Southpark is not responsible for CLT's failure to inform its representatives about the terms of its own lease, nor for CLT's failure to maintain bookkeeping services to timely pay its rentals.

The trial court's entry of judgment and order of ejectment in favor of Southpark is hereby affirmed.

Affirmed.

Judges MARTIN and TIMMONS-GOODSON concur.