KROGER LIMITED PARTNERSHIP PARTNERSHIP I AND RALPH URBAN
DEVELOPMENT II, LLC, PLAINTIFFS v. THOMAS GUASTELLO, DEFENDANT

No. COA05-661

(Filed 2 May 2006)

**1. Landlord and Tenant— lease—construction—garden shop not a part of building**

The trial court did not err by construing a lease to decide that a garden shop with a roof but no walls was not a part of the leased "building" under the terms of the lease so that defendant landlord's consent was not required for plaintiff tenant's demolition of the garden shop and erection of a post office building in its place.

**2. Landlord and Tenant— lease—practice of successors in interest—no bearing on intent of lease**

The trial court did not construe a lease contrary to the parties' course of conduct, as defendant contended, by deciding that a garden shop with a roof but no walls was not part of a building under the lease. Both of the parties here were successors in interest, so that their conduct has no bearing on the intent of the original parties when they signed the lease, and defendant offered no examples of compelling behavior that would overcome the plain language of the lease.

**3. Landlord and Tenant— demolition of garden shop—no impact on structural integrity of building**

There was no error in the trial court's finding and conclusion that the demolition of a garden shop did not have an impact on the structural integrity of a leased building where there was testimony to that effect from the project supervisor whose company removed the shop area. The contention that the garden shop was part of the "building" under the lease was rejected elsewhere in this opinion.

**4. Civil Procedure— findings on ultimate issues—other findings not required**

The trial court did not err in a case about a disputed lease by not making certain findings and conclusions. The court made detailed findings of ultimate fact and conclusions supporting its decision.

**5. Trials— reliance on affidavit from earlier hearing—different subject matter**

The trial court did not improperly take notice of an affidavit from an earlier hearing where the finding did not mention the subject of the affidavit.

**6. Trials— findings from earlier hearing—procedural history recited—substance not adopted**

The trial court did not improperly adopt findings from an earlier preliminary injunction hearing where the court merely recited the procedural history of the case, but did not adopt the substance of the findings from the earlier hearing.

Appeal by defendant from an order entered 1 June 2004 by Judge Robert H. Hobgood in Wake County Superior Court. Heard in the Court of Appeals 7 February 2006.

*Womble Carlyle Sandridge & Rice, PLLC, by Christopher T. Graebe and Sean E. Andrussier; Pendergrass Law Firm, PLLC, by James K. Pendergrass, for plaintiff-appellee Kroger Limited Partnership I.*

*Herring McBennett Mills & Finkelstein, PLLC, by Mark A. Finkelstein, for plaintiff-appellee Ralph Urban Development II, LLC.*

*Nicholls & Crampton, P.A., by W. Sidney Aldridge; Touma, Watson, Whaling, Coury & Castello, P.C., by S. Douglas Touma, for defendant-appellant.*

HUNTER, Judge.

Thomas Guastello ("defendant") appeals from an order of the trial court concluding that his commercial tenant, Kroger Limited Partnership I ("Kroger"), did not default on its lease when it demolished a garden shop on the site of the leased premises in order to erect a post office building. The trial court concluded defendant's consent to demolition of the garden shop was not required under the terms of the lease, and defendant was therefore not entitled to damages. Defendant contends the trial court erred in its construction of the lease. For the reasons stated herein, we affirm the order of the trial court.

The central dispute in this case arises over the interpretation of the term "building" as used in the lease between tenant Kroger and

landlord defendant for commercial premises located at 350 Six Forks Road in Raleigh, North Carolina. Both Kroger and defendant are successors in interest to the lease dated 26 April 1988. In the lease, the parties agreed to lease

> the following property: (i) Tenant's completed building (designated Builders Square), (ii) site improvements, to be constructed as hereinafter specified by Landlord, at its expense, and (iii) land comprising not less than Seven (7) acres, said land described in Exhibit "A", attached hereto and made a part hereof, and situated in the City of Raleigh . . . ; said building to be in the location and of the dimensions as depicted on Exhibit "B", attached hereto and made a part hereof.

> Said land, Tenant's completed building and the site improvements, together with all licenses, rights, privileges and easements, appurtenant thereto, shall be herein collectively referred to as the "demised premises".

Exhibit B, referenced by and incorporated into the lease, is a site plan of the demised premises. It shows an enclosed building with stated dimensions of 80,160 square feet and designated "Builders Square." These 80,160 square feet represent the entire dimensions of the enclosed building. The site plan also depicts two areas adjacent to the enclosed building labeled "garden shop" and "lumber staging." These two areas are not included in the 80,160 square-foot enclosed building designated "Builders Square."

> Paragraph 15 of the lease provides in pertinent part as follows:

> Tenant may, at its own expense, from time to time, make such alterations, additions or changes, structural or otherwise, in and to its building as it may deem necessary or suitable; provided, however, Tenant shall obtain Landlord's prior written consent to drawings and specifications for structural alterations, additions or changes; provided, further, Landlord shall not withhold its consent thereto if the structural integrity of the building will not be impaired by such work. The term "structural changes", as used herein, shall not include moving of non-load bearing partitions, relocation of building entry doors, minor plumbing and electrical work, modification and rearrangement of fixtures or other minor changes. Landlord, at Tenant's cost, shall cooperate with Tenant in securing building and other permits or authorizations required from time to time for any work permitted hereunder or for installations by Tenant.

Tenant may, at its own expense, at any time, erect or construct additional buildings or structures on any portion of the demised premises. In such event, gross sales made in or from said additions shall be excluded from gross sales, as defined in Article 4 of this lease. Said additional buildings or structures shall be excluded from the taxable premises and all ad valorem taxes and assessments levied thereon shall not be deductible from additional rents payable under the terms of Article 4, hereof. Tenant shall also be solely responsible for exterior and interior repairs thereto, except those necessitated by fire, the elements or other casualty. In the event Tenant constructs any such additions or new construction, Landlord shall not be obligated to furnish additional parking areas in substitution of areas thereby built over and the number of parking spaces required under Article 10, hereof, shall be reduced by the number of spaces covered by such additional buildings or structures.

In December of 2001, Kroger demolished the area labeled "garden shop," which was vacant and not utilized at the time, in order to construct a post office facility. Demolition of the garden shop area necessitated the following: removal of the sheet-metal roof and roof-decking steel; destruction and removal of the electrical system and fixtures, plumbing system and fixtures, and roof drainage system; cutting of the masonry wall from the front wall of the building; and destruction and removal of the concrete slab. Defendant did not consent to demolition of the garden shop area and, in fact, vigorously objected to Kroger's actions.

Upon consideration of the matter, the trial court determined that the areas designated "garden shop" and "lumber staging" in Exhibit B were not part of the "building" under the terms of the lease, and that, pursuant to Paragraph 15 of the lease, demolition of the garden shop area did not impair or otherwise affect the structural integrity of the building. As such, the trial court ruled that defendant's consent to demolition of the garden shop area and erection of the post office building in its stead was not required, and that Kroger had not thereby defaulted on the lease. The trial court entered an order denying defendant's claim for money damages accordingly. Defendant appeals.

[1] Defendant contends the trial court erred in its interpretation of the term "building" as used in the lease. According to defendant, the plain and ordinary meaning of the term "building" as used in the lease

includes the garden shop area, and the trial court erred in determining otherwise.

"The terms of a lease, like the terms of any contract, are construed to achieve the intent of the parties at the time the lease was entered into." *Lexington Ins. Co. v. Tires Into Recycled Energy and Supplies, Inc.*, 136 N.C. App. 223, 225, 522 S.E.2d 798, 800 (1999). "Where the language of a contract is clear, the contract must be interpreted as written." *Southpark Mall Ltd. Part. v. CLT Food Mgmt., Inc.*, 142 N.C. App. 675, 678, 544 S.E.2d 14, 16 (2001); *see also Hemric v. Groce*, 169 N.C. App. 69, 76, 609 S.E.2d 276, 282 (noting that where the plain language of a contract is clear, the intention of the parties is inferred from the words of the contract), *disc. review dismissed, cert. denied*, 359 N.C. 631, 616 S.E.2d 234 (2005). "[W]here a non-technical word is not defined in a lease, we must interpret the word consistent with its plain dictionary meaning[.]" *Southpark*, 142 N.C. App. at 678, 544 S.E.2d at 16; *see also Charlotte Housing Authority v. Fleming*, 123 N.C. App. 511, 514, 473 S.E.2d 373, 375 (1996) (noting that, as with contracts, a word in a lease should be given its ordinary meaning and significance).

In the present case, the lease requires defendant's consent to any changes which impair the "structural integrity of the building[.]" The word "building" is not expressly defined in the lease. However, the lease specifies that the building to be leased is "in the location and of the dimensions as depicted on Exhibit 'B[.]'" Exhibit B is incorporated into the lease and shows a building with stated dimensions of 80,160 square feet and designated "Builders Square." The 80,160 square-foot enclosed building does not include the garden shop area.

We agree with the trial court that under the plain language of the lease, the garden shop area is not included under the term "building." The lease specifies that the "building" leased by Kroger refers to Exhibit B, which in turn depicts an enclosed building with dimensions of 80,160 square feet and labeled "Builders Square." The garden shop area is not part of the enclosed building as depicted in Exhibit B.

Our interpretation of the lease is supported by the plain meaning of the term "building." According to the dictionary, the definition of "building" is

a constructed edifice designed to stand more or less permanently, covering a space of land, usu[ally] covered by a roof *and more or*

*less completely enclosed by walls,* and serving as a dwelling, storehouse, factory, shelter for animals, or other useful structure—distinguished from structures not designed for occupancy (as fences or monuments) and from structures not intended for use in one place (as boats or trailers) even though subject to occupancy[.]

Webster's Third New Int'l Dictionary 292 (1968) (emphasis added); *see also* Black's Law Dictionary 207 (8th ed. 2004) (defining "building" as "[a] structure with walls and a roof, esp. a permanent structure"); *Nash-Rocky Mount Bd. of Educ. v. Rocky Mount Bd. of Adjust.,* 169 N.C. App. 587, 590-91, 610 S.E.2d 255, 258 (2005) (reciting the above-listed definitions of "building"). The garden shop area, although covered by a sheet-metal roof, was not enclosed by walls, but rather by chain-link fencing only. This Court has noted that a building "in its ordinary sense, is defined as a '[s]tructure designed for habitation, shelter, storage, trade, manufacture, religion, business, education, and the like. A structure or edifice *inclosing a space within its walls,* and usually, but not necessarily, covered with a roof.' " *Davidson County v. City of High Point,* 85 N.C. App. 26, 38, 354 S.E.2d 280, 287 (quoting Black's Law Dictionary 176 (5th ed. 1979)) (emphasis added), *modified on other grounds,* 321 N.C. 252, 362 S.E.2d 553 (1987).

In support of his position, defendant cites several cases in which the term "building" is more expansively defined. *See, e.g., State v. Cuthrell,* 235 N.C. 173, 175, 69 S.E.2d 233, 234 (1952) (in the context of the crime of arson, "[t]he word 'building' embraces any edifice, structure, or other erection set up by the hand of man, designed to stand more or less permanently, and which is capable of affording shelter for human beings, or usable for some useful purpose"); *State v. McNeil,* 28 N.C. App. 125, 126, 220 S.E.2d 401, 402 (1975) (citation omitted) (noting that North Carolina's arson statute defines the term "building" as " 'dwelling, dwelling house, uninhabited house . . . and any other structure designed to house or secure within it any activity or property' "). These cases focus on the crime of arson, however, in which context the term "building" is defined as broadly as possible in order to prevent the burning of lesser structures. *See* Black's Law Dictionary at 207 (noting that, "[f]or purposes of some criminal statutes, such as burglary and arson, the term *building* may include such things as motor vehicles and watercraft"). As such, they are not persuasive precedent for interpretation of the term "building" as found in a commercial lease. Nor do we find compelling defendant's

citation to *Cardwell v. Town of Madison Bd. of Adjustment*, 102 N.C. App. 546, 548, 402 S.E.2d 866, 867 (1991). In that case, the Court referenced a town zoning ordinance which specifically defined the term "building" as " '[a]ny structure having a roof supported by columns or by walls, and intended for shelter, housing or enclosure of persons, animals, or chattel.' " *Id.* (citation omitted). The Court did not, however, embrace or adopt this definition of the term "building." Mere recital of a particular definition under one town's zoning ordinance does not support defendant's assertion that the plain, ordinary meaning of "building" would include the open-air garden center at issue here. Indeed, the *Cardwell* Court noted that the definition of building found in the town zoning ordinance was not compatible with the state building code's definition of "building," inasmuch as the "building code concerns construction while the zoning ordinance is directed to land use." *Id.* at 551, 402 S.E.2d at 869.

Defendant also purports to cite to Black's Law Dictionary as defining the term "building" simply as "an edifice." Defendant provides no citation to the particular edition of Black's Law Dictionary providing this definition, however, nor have we discovered such. As previously noted, the current edition of Black's Law Dictionary defines the term "building" as "[a] structure with walls and a roof, esp. a permanent structure." Black's Law Dictionary, *supra*. The fifth edition of Black's Law Dictionary, as noted *supra*, defines a building as "[a] structure or edifice inclosing a space within its walls, and usually, but not necessarily, covered with a roof." Black's Law Dictionary 176 (5th ed. 1979).

Defendant further contends the North Carolina Building Code supports his position. Defendant cites to the 1991 North Carolina Building Code's definition of "building *area*" as "the maximum horizontally projected area of the building at or above grade, exclusive of areas open and unobstructed to the sky." Defendant argues the garden shop area meets this definition. Plaintiff notes that this definition was not in effect at the time the lease was drafted. Even if the definitions contained in the 1991 Building Code were persuasive authority, however, a building "area" is not the same as a "building." Notably, defendant makes no mention of the 1991 Building Code's definition of "building" which is "any structure that *encloses* a space used for sheltering any occupancy. Each portion of a building separated from other portions by a fire wall shall be considered as a separate building." North Carolina State Building Code § 2, 8.1 (1991) (emphasis added). The garden shop area was not enclosed and it was separated

from the building designated "Builders Square" by a fire wall. Thus, contrary to defendant's argument, the 1991 North Carolina Building Code supports the trial court's interpretation of the lease. We overrule defendant's argument that the plain and ordinary meaning of the term "building" as found in the lease includes the garden shop area.

Defendant argues that other provisions of the lease agreement make clear that the garden shop area was to be included within the term "building." For example, defendant cites to Paragraph 30 in the lease regarding condition of the demised premises upon termination of the lease. Defendant argues that Paragraph 30 "requires the Tenant to turn over the 'demised premises' in the same condition it was received by Tenant, ordinary wear and tear excepted." Defendant contends that demolition of the garden shop area prevents Kroger from turning over the demised premises in the same condition it was received. Defendant's interpretation of Paragraph 30 is flawed. Paragraph 30 states that upon termination, "Tenant shall surrender the demised premises, together with alterations, additions and improvements then a part thereof, in good order and condition[.]" Rather than the *same* condition, as asserted by defendant, Paragraph 30 only requires the demised premises to be surrendered in *good* condition. Moreover, Paragraph 30 specifically contemplates the possibility of "alterations, additions and improvements" to the demised premises.

Defendant also cites Paragraph 4 of the lease, which allows the landlord to annually collect from the tenant one percent of all gross sales exceeding sixteen million dollars. Defendant argues that this provision "treat[s] the Garden Shop as part of the sales area," and therefore the garden shop area should be "treat[ed] . . . as part of the building" (emphasis omitted). This argument has no merit. Paragraph 4 makes no specific mention of the garden shop area. According to Paragraph 4, "gross sales" include "the total sales of merchandise or services made by Tenant . . . on any part of the land[.]" Thus, the landlord is entitled to one percent of gross sales over sixteen million dollars occurring anywhere on the demised premises, and is not tied to any specific location. In other words, as noted by Kroger, the "rent is tied to the value of the tenant's sales and not to the location of those sales[.]" As such, Paragraph 4 provides no guidance as to whether the garden shop area is to be included in the term "building." We overrule defendant's first assignment of error.

[2] By his second assignment of error, defendant contends the trial court erred in failing to construe the lease in harmony with the par-

ties' course of conduct with regard to the lease. Citing *Patterson v. Taylor*, 140 N.C. App. 91, 535 S.E.2d 374 (2000), defendant argues the parties treated the garden shop area as a part of the building. While it is true that "extrinsic evidence of the parties' behavior implementing the agreement is probative of the parties' intent at the time of the execution of the agreement," it is also true that, as successors in interest, neither party here drafted the lease at issue. *Id.* at 97, 535 S.E.2d at 378. The present parties' conduct therefore has no bearing on the original drafters' intent when forming the lease. Moreover, defendant has proffered no compelling examples of behavior by the parties that would overcome the plain language of the lease. We overrule this assignment of error.

[3] Defendant contends the trial court erred in concluding that the structural integrity of the building was not impaired by demolition of the garden shop area. Defendant's argument relies entirely upon his contention that the garden shop area was a part of the "building" as set forth in the lease. We have determined, however, that the trial court properly concluded that the garden shop area was not a part of the Builders Square building. Further, Charles Wolfe, the project supervisor whose company removed the garden shop area and built the post office, testified that demolition of the garden shop area and erection of the post office did not impact the structural integrity of the Builders Square building. The trial court therefore did not err in finding and concluding that demolition of the garden shop area did not impact the structural integrity of the building. We overrule this assignment of error.

[4] Defendant next argues the trial court violated Rule 52(a)(1) by failing to make certain findings of fact and conclusions of law. However:

> Rule 52(a)(1) does not require the trial court to recite all of the evidentiary facts; it is required only to find the ultimate facts, i.e., those specific material facts which are determinative of the questions involved in the action and from which an appellate court can determine whether the findings are supported by the evidence and, in turn, support the conclusions of law reached by the trial court.

*Mann Contr'rs, Inc. v. Flair with Goldsmith Consultants-II, Inc.*, 135 N.C. App. 772, 774, 522 S.E.2d 118, 120-21 (1999). The trial court here made detailed findings of ultimate fact and conclusions of law supporting its decision, and we overrule this assignment of error.

KROGER LTD. P'SHIP v. GUASTELLO

[177 N.C. App. 386 (2006)]

**[5]** As further assignment of error, defendant contends the trial court improperly took judicial notice of an affidavit submitted during an earlier preliminary injunction hearing. Defendant concedes that a court must take judicial notice of its own prior proceedings involving the same cause if requested to do so by a party. *Georgia-Pacific Corp. v. Bondurant*, 81 N.C. App. 362, 367, 344 S.E.2d 302, 306 (1986). Defendant nevertheless argues that the affidavit in question addressed the disputed issue of whether the demolition of the garden shop area affected the structural integrity of the building, and that the trial court improperly relied upon the affidavit in making its Finding of Fact No. 28. Contrary to defendant's assertions, however, Finding of Fact No. 28 addresses only whether or not the new post office is an "additional building" under the terms of the lease. It makes no mention of the garden shop area and whether its removal affected the structural integrity of the building. We overrule this assignment of error.

Defendant argues the trial court erred in concluding that defendant's consent to demolition of the garden shop area was not required under the lease. Again, this argument is dependent upon defendant's earlier assertions that the garden shop area was a part of the building, which we have rejected. We likewise overrule this assignment of error.

**[6]** By his final assignment of error, defendant contends the trial court was improperly influenced by the earlier preliminary injunction proceedings. Specifically, defendant argues the trial court improperly adopted findings made during the earlier hearing regarding defendant's behavior and incorporated them into Finding of Fact No. 24. Finding of Fact No. 24, however, merely recites the procedural history of the case, and does not adopt as fact the substance of the findings made during the earlier hearing. We overrule defendant's final assignment of error.

In conclusion, we hold the trial court did not err in its construction of the lease. We therefore affirm the order of the trial court denying defendant's claim for damages for breach of contract.

Affirmed.

Judges WYNN and JACKSON concur.