Comput. Design & Integration, LLC v. Brown, 2016 NCBC 94.

STATE OF NORTH CAROLINA

MECKLENBURG COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
16 CVS 11847

COMPUTER DESIGN &
INTEGRATION, LLC and
COMPUTER DESIGN &
INTEGRATION SOUTHEAST, LLC,

   Plaintiffs,

v.

DAVID A. BROWN, MARCUS
JACOBY, and ROVE, LLC,

   Defendants,

DAVID A. BROWN and MARCUS
JACOBY,

   Third-Party Plaintiffs,

v.

ERIC BAKKER and BRIAN T. REID,
CPA,

   Third-Party Defendants.

ORDER AND OPINION ON
DEFENDANT BROWN'S
MOTION TO DISMISS

1. **THIS MATTER** is before the Court upon Defendant David A. Brown's ("Brown" or "Defendant") Motion to Dismiss the First, Second, Third, Fourth, Fifth, Seventh, Eighth, Ninth, Tenth, Eleventh, and Twelfth Claims for Relief (the "Motion") in the above-captioned case.

2. After considering the Motion, briefs in support of and in opposition to the Motion, and the arguments of counsel at the hearing on October 26, 2016, the Court **DENIES** the Motion.

*Bell, Davis & Pitt, P.A., by Edward B. Davis and Joshua B. Durham, for Plaintiffs Computer Design & Integration, LLC and Computer Design & Integration Southeast, LLC and Third-Party Defendants Eric Bakker and Brian T. Reid.*

*Alexander Ricks, PLLC, by Mary K. Mandeville and Alice C. Richey, for Defendants David A. Brown, Marcus Jacoby, and Rove, LLC and Third-Party Plaintiffs David A. Brown and Marcus Jacoby.*

Bledsoe, Judge.

## I.

## PROCEDURAL HISTORY

3. This action arises out of failed buyout negotiations and involves claims by a former employer/LLC manager relating to allegedly unlawful conduct by two former employees, one of whom was an equal LLC member with the manager, and their new company.

4. Computer Design & Integration, LLC ("CDI") and Computer Design & Integration Southeast, LLC ("CDISE") (collectively, "Plaintiffs") filed their Verified Complaint ("Complaint") on June 30, 2016, asserting claims against Brown, Marcus Jacoby ("Jacoby"), and Rove, LLC ("Rove") (collectively, "Defendants"). One or both Plaintiffs assert eleven claims against Brown: breach of operating agreement ("First Claim"); failure to negotiate in good faith ("Second Claim"); breach of duty of good faith and fair dealing ("Third Claim"); misappropriation of trade secrets ("Fourth Claim"); conversion ("Fifth Claim"); breach of fiduciary duty ("Seventh Claim"); tortious interference with contract ("Eighth Claim"); tortious interference with prospective economic relations ("Ninth Claim"); unfair and deceptive trade practices

("Tenth Claim"); preliminary injunction ("Eleventh Claim"); and permanent injunction ("Twelfth Claim") (collectively, the "Claims at Issue").

5.     On August 31, 2016, Defendants filed their Answer to the Complaint, and Brown filed the Motion, which seeks a dismissal of each of the Claims at Issue.

6.     The Motion has been fully briefed, and the Court held a hearing on the Motion on October 26, 2016, at which all parties were represented by counsel. The Motion is now ripe for resolution.

II.

FACTUAL BACKGROUND

7.     The Court does not make findings of fact on motions to dismiss under Rule 12(b)(6), but only recites those facts included in the Complaint that are relevant to the Court's determination of the Motion.

8.     CDI designs, deploys, and manages multiplatform hybrid IT solutions for businesses and often partners with technology companies in order to address the needs of CDI's customers. (Compl. ¶ 6.)

9.     Brown was working for a partner of CDI when CDI and Brown discussed an expansion of CDI into the Southeastern United States. (Compl. ¶¶ 8–9.) Brown decided to resign from his current position to assist with the expansion. (Compl. ¶ 9.) CDI and Brown then organized CDISE as a North Carolina limited liability company in the fall of 2010. (Compl. ¶¶ 2, 10.) CDI and Brown entered into a written operating agreement for CDISE, dated November 5, 2010 ("Operating Agreement"). (Compl. ¶ 10.) The Operating Agreement provided that Brown and CDI each held a

fifty-percent membership interest in CDISE, Brown would serve as President and handle the day-to-day management of CDISE, and CDI would be the managing member with "full, complete and exclusive authority, power and discretion to direct, manage and control the business, affairs and assets of the Company . . . [and] to perform any and all acts or activities it deems necessary . . . ." (Compl. ¶ 10.)

10. On December 8, 2015, Brown and CDI agreed to terms concerning Brown's purchase of the assets of CDISE, but the deadline for closing passed without consummation of the transaction. (Compl. ¶¶ 13, 15.) The parties subsequently agreed to a later date for the completion of the transaction, but the transaction still did not close, and CDI and Brown's relationship deteriorated. (Compl. ¶¶ 15–18.) Ultimately, Brown tendered his resignation as President of CDISE on June 16, 2016. (Compl. ¶ 19.)

11. Plaintiffs allege, among other things, that before his resignation, Brown hired for employment at Rove some of CDISE's prospective employees, failed to include paperwork concerning deals in CDISE's records, failed to close on CDISE's proposals with American Credit Acceptance and Octapharma Plasma to allow Rove to obtain their business, used CDISE's confidential financial information to obtain business credit for Rove, and solicited for Rove some of CDISE's customers "in an effort to appropriate [CDISE's] business for himself and Defendant Rove." (Compl. ¶¶ 21–29.) Further, Plaintiffs contend that, after his resignation, Brown and Jacoby solicited and induced at least thirty employees to terminate their employment with CDISE in order to commence work for Rove, removed sensitive business records and

assets belonging to CDISE from CDISE's offices, and solicited, and continue to solicit, CDISE's customers. (Compl. ¶¶ 30–33.)

## III.

## LEGAL STANDARD

12. When ruling on a motion to dismiss pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure, the Court determines "whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory, whether properly labeled or not." *Crouse v. Mineo*, 189 N.C. App. 232, 237, 658 S.E.2d 33, 36 (2008) (quoting *Harris v. NCNB,* 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987)). The Court liberally construes the complaint in the light most favorable to the plaintiff and does not dismiss the complaint "'unless it appears beyond doubt that [the] plaintiff could prove no set of facts in support of his claim which would entitle him to relief.'" *Holloman v. Harrelson,* 149 N.C. App. 861, 864, 561 S.E.2d 351, 353 (2002) (quoting *Dixon v. Stuart,* 85 N.C. App. 338, 340, 354 S.E.2d 757, 758 (1987)).

13. When ruling on a Rule 12(b)(6) motion, the court "may . . . consider documents which are the subject of a plaintiff's complaint and to which the complaint specifically refers even though they are presented by the defendant." *Oberlin Capital, L.P. v. Slavin*, 147 N.C. App. 52, 60, 554 S.E.2d 840, 847 (2001); *see also Laster v. Francis*, 199 N.C. App. 572, 577, 681 S.E.2d 858, 862 (2009).

14. Dismissal of a complaint under Rule 12(b)(6) is proper: "(1) when the complaint on its face reveals that no law supports plaintiff's claim; (2) when the

complaint on its face reveals the absence of fact sufficient to make a good claim; [or] (3) when some fact disclosed in the complaint necessarily defeats plaintiff's claim." *Jackson v. Bumgardner*, 318 N.C. 172, 175, 347 S.E.2d 743, 745 (1986). Otherwise, "a complaint should not be dismissed for insufficiency unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim." *Sutton v. Duke*, 277 N.C. 94, 103, 176 S.E.2d 161, 166 (1970) (emphasis omitted).

15. Factual allegations are accepted as true, but the Court is not required to accept as true "allegations that are contradicted by the documents attached, specifically referred to, or incorporated by reference in the complaint." *Laster*, 199 N.C. App. at 577, 681 S.E.2d at 862.

IV.

ANALYSIS

A. Motion to Dismiss the Claims

16. Brown first seeks to dismiss the Claims at Issue by arguing that Plaintiffs lack authority to file the Claims at Issue as direct claims under Section 6.1.3 (xiv) of the Operating Agreement and further that Plaintiffs have not met the statutory demand requirements necessary to assert derivative claims on behalf of CDISE. (Brown's Br. Supp. Mot. Dismiss 1.)

17. Sections 6.1.1 of the Operating Agreement provides that CDI shall have broad authority to act as the Managing Member of CDISE:

6.1.1 The business, affairs and assets of the Company shall be managed by a managing member who shall act as a manager of the Company pursuant

to the Act ("**Managing Member**"). Except as otherwise provided in this Agreement, the Managing Member shall have full, complete and exclusive authority, power and discretion to direct, manage and control the business, affairs and assets of the Company, to exercise any and all other acts or activities it deems necessary, appropriate, proper, advisable or convenient with respect thereto. The initial Managing Member shall be Computer Design & Integration, LLC ("**CDI**"), and shall serve as the same until such Managing Member resigns or shall be replaced by the affirmative vote or consent of a Majority in Interest of the Members.

(Brown's Mot. Dismiss, Ex. A.)

18.     Nevertheless, section 6.1.3 of the Operating Agreement makes clear that certain corporate actions shall require 75% of the Percentage Interest (i.e., 75% of the membership percentage interests in CDISE) before they may be undertaken, including, according to Brown, filing this action:

> 6.1.3 Notwithstanding anything to the contrary set forth in this Agreement, the consent of at least seventy-five percent (75%) of the Percentage Interest then held by the Members shall be required to do any of the following: . . . (xiv) *Perform any act that would subject any Member to personal liability* . . .

(Brown's Mot. Dismiss, Ex. A.) (emphasis added.)

19.     Brown contends that the filing of this legal action against him is an "act that would subject [him] to personal liability" under section 6.1.3. As a result, according to Brown, because CDI and Brown each have a 50% membership interest in CDISE, and because Brown did not authorize the filing of this action, the filing of the action was not authorized by the required 75% of the Percentage Interest and therefore may not be maintained. Plaintiffs argue in opposition, however, that the filing and prosecution of this lawsuit does not implicate section 6.1.3(xiv) because Brown's alleged misconduct constitutes the "act" or "acts" that subjected him to personal liability—not the filing of the litigation. (Pls.' Mem. Opp. Mot. Dismiss 5.)

20.     To interpret an operating agreement and its provisions, the Court employs general rules of contract construction.  *See* N.C. Gen. Stat. § 57D-2-30 (e) ("the law[] of . . . contracts . . . govern[s] the administration and enforcement of operating agreements"); *N.C. State Bar v. Merrell,* 777 S.E.2d 103, 114 (N.C. App. 2015) (citing *Bank of Am., N.A. v. Rice,* 230 N.C. App. 450, 455–56, 750 S.E.2d 205, 209 (2013)) ("An Operating Agreement is a contract"); *Crouse,* 189 N.C. App. at 237, 658 S.E.2d at 36); *Richardson v. Kellar,* 2016 NCBC LEXIS 62, at *12 (N.C. Super. Ct. Aug. 2, 2016).

21.     Contract construction seeks to determine "the intent of the parties when the contract was issued" by deriving intent "from the language in the contract."  *N.C. State Bar,* 777 S.E.2d at 114 (quoting *Rice,* 230 N.C. at 455, 750 S.E.2d at 209).  The language in the contract "should be given its natural and ordinary meaning," *see e.g., Southpark Mall Ltd. P'ship v. CLT Food Mgmt.,* 142 N.C. App. 675, 678, 544 S.E.2d 14, 16 (2001) (citation omitted), and harmoniously construed to give every word and every provision effect, *In re Foreclosure of a Deed of Trust,* 210 N.C. App. 409, 415, 708 S.E.2d 174, 178 (2011) (citation omitted).  Construction of a contact is a matter of law for the court if the language of the contract is plain and unambiguous. *Southpark Mall Ltd.,* 142 N.C. App. at 679, 544 S.E.2d at 17.

22.     After careful review of the specific terms of the Operating Agreement, the Court concludes that section 6.1.3(xiv) is plain and unambiguous and that the natural and ordinary meaning of the language "[p]erform any act that would subject any Member to personal liability" does not encompass the filing of this lawsuit.   Indeed,

the filing of a legal action does not create or impose personal liability upon a defendant. Rather, it is the unlawful conduct of the defendant that creates or imposes personal liability; a lawsuit is simply the legal mechanism through which a defendant's unlawful conduct that gives rise to personal liability may be redressed. Moreover, section 6.1.3(xiv) is reasonably susceptible to but a single meaning—i.e., that the members have agreed to a heightened level of member agreement to permit CDISE to take action that would result in CDISE's members facing personal liability for CDISE's conduct, not as a measure to limit or eliminate CDISE's recourse in the event a member caused legal injury to CDISE. As such, the Court concludes that the filing of this action against Brown for his allegedly wrongful conduct cannot be understood as an action that "would subject [Brown] to personal liability" under section 6.1.3(xiv).

23. Accordingly, the Court concludes that the Operating Agreement does not require 75% of the Percentage Interest of CDISE to consent to the filing of this action as argued by Brown. To the contrary, the Operating Agreement makes clear that CDI, as the Managing Member of CDISE with "exclusive authority, power and discretion to direct, manage and control the business, affairs and assets of the Company . . . [and] to perform any and all other acts or activities it deems necessary . . .", has full power and authority to cause CDISE to file this suit. *See generally Crouse*, 189 N.C. App. at 239, 658 S.E.2d at 37–38 (holding LLC's initiation of litigation against co-manager to be "a management decision").[1] As such, CDI need

---

[1] The North Carolina Limited Liability Act applies only "to the extent contrary or inconsistent provisions are not made in, or are not otherwise supplanted, varied, disclaimed, or nullified

not assert CDISE's claims against Brown derivatively nor satisfy the demand requirement under N.C. Gen. Stat. § 57D-8-01 as Brown contends. Brown's motion to dismiss the Claims at Issue on this basis should therefore be denied.

B. Motion to Dismiss Breach of Fiduciary Duty Claim

24. Brown also moves to dismiss or clarify CDISE's claim for breach of fiduciary duty on the alternative ground that Brown does not owe a fiduciary duty to CDI as a member of CDISE. (Brown's Br. Supp. Mot. Dismiss 6.) The breach of fiduciary duty claim against Brown, however, is not premised on an alleged fiduciary duty to CDI. To the contrary, CDISE's breach of fiduciary duty claim is brought solely by CDISE and is premised on Brown's fiduciary duty to CDISE arising from his role as President. (Compl. ¶¶ 74–77.) As Brown recognizes, N.C. Gen. Stat. § 57D-3-23 expressly provides that a company official shall have the same duties and standards of conduct as a manager under N.C. Gen. Stat. § 57D-3-21, including the obligation to discharge his duties (i) in good faith, (ii) with the care an ordinary prudent person in a like position would exercise under similar circumstances, and (iii) subject to the Operating Agreement, in a manner the company official believes to be in the best interests of the LLC. Accordingly, Brown's motion to dismiss CDISE's breach of fiduciary duty claim should be denied.

---

by, the operating agreement." N.C. Gen. Stat. § 57D-2-30 (a). Under the default statutory provisions, a "manager" is "any person designated as a manager as provided by the operating agreement." N.C. Gen. Stat. § 57D-1-03 (20). "The management of an LLC and its business is vested in the managers" and "[m]anagement decisions approved by a majority of the managers are controlling" and can be made "without a meeting and without notice." N.C. Gen. Stat. § 57D-3-20 (a), (b).

## V.

## CONCLUSION

25.    Based on the foregoing, the Court hereby **DENIES** Brown's Motion to Dismiss.

**SO ORDERED**, this the 6th day of December, 2016.

/s/ Louis A. Bledsoe, III
Louis A. Bledsoe, III
Special Superior Court Judge
  for Complex Business Cases