EHP Land Co., Inc. v. Bosher, 2010 NCBC 16.

STATE OF NORTH CAROLINA

COUNTY OF PERQUIMANS

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
07 CVS 59

EHP LAND CO., INC., )
              Plaintiff )
 )
          v. )
 )
VIRGINIA W. BOSHER, ROBERT M. )
BOSHER, CHRISTINA BOSHER HERZ, )
CAROLYN BOSHER MALONEY, ROBERT )
M. BOSHER, JR., JENNIFER L. BOSHER, )
JOHN P. DOOLEY, MICHAEL C. DOOLEY, )
SARAH E. HERZ, ANDREW T. HERZ, )
CHRISTINA P. MALONEY, VIRGINIA M. )
MALONEY, CLIFTON H. W. MALONEY, )
PHIL UPTON, CINDY W. BOSHER, )
ARTHUR R. ROBB, JR. AND CHRISTINE )
BOSHER, as Co-Executors of the Estate of )
RALPH G. BOSHER, Deceased, and HPB )
ENTERPRISES, a North Carolina General )
Partnership, )
              Defendants )

**OPINION AND ORDER ON
MOTION FOR SUMMARY
JUDGMENT**

THIS CAUSE, designated a mandatory complex business case by Order of the Chief Justice of the North Carolina Supreme Court, dated April 10, 2007, pursuant to N.C. Gen. Stat. § 7A-45.4(b) (hereinafter, references to the North Carolina General Statutes will be to "G.S."); and assigned to the undersigned Special Superior Court Judge for Complex Business Cases, by order of the Chief Special Superior Court Judge for Complex Business Cases, dated April 17, 2007, is before the court upon (a) Plaintiff's Motion for Judgment on the Pleadings, pursuant to Rules 12(c), 12(b)(6) and 12(b)(7), North Carolina Rules of Civil Procedure ("Rule(s)"); (b) Motion to Dismiss, pursuant to Rule 12(b)(6), by Defendants Virginia W. Bosher, Robert M. Bosher,

Christina Bosher Herz, Carolyn Bosher Maloney, Robert M. Bosher, Jr. Jennifer L. Bosher, John P. Dooley, Michael C. Dooley, Sarah E. Herz, Andrew T. Herz, Phil Upton, Cindy W. Bosher and HPB Enterprises (collectively, for purposes of their Motion to Dismiss, the "Defendants"); (c) Plaintiff's Motion for Summary Judgment on its Fourth and Seventh Claims for Relief, pursuant to Rule 56 and (d) Motion for Summary Judgment, pursuant to Rule 56, by Defendants Virginia W. Bosher, Phil Upton, Robert M. Bosher, Cindy W. Bosher, Robert M. Bosher, Jr. and Jennifer L. Bosher (collectively, for purposes of their Motion for Summary Judgment, the "Defendants").

THE COURT, after considering the arguments, briefs, depositions, affidavits, other submissions of counsel and appropriate matters of record, as discussed *infra*, determines that the Plaintiff's Motion for Summary Judgment on its Fourth and Seventh Claims for Relief (the "Motion") is determinative of the primary issue before the court in this civil action, that it should be considered and discussed first, and the Motion should be GRANTED in part and DENIED in part.

THE COURT further determines that Plaintiff's Motion for Judgment on the Pleadings should be DENIED; Defendants' Motion to Dismiss should be DENIED and Defendants' Motion for Summary Judgment should be GRANTED in part and DENIED in part, all as reflected herein.

> *Ward & Smith, PA by A. Charles Ellis, Esq. and E. Bradley Evans, Esq. for Plaintiff EHP Land Co., Inc.*
>
> *Graebe Hanna & Welborn, PLLC by Christopher T. Graebe, Esq. for Defendants Virginia W. Bosher, Robert M. Bosher, Robert M. Bosher, Jr., Jennifer L. Bosher, Phil Upton and Cindy W. Bosher.*
>
> *Poyner & Spruill, LLP by David Dreifus, Esq. and John W. O'Hale, Esq. for Defendants Christina Bosher Herz and Carolyn Bosher Maloney.*

*Christina P. Maloney, pro se.*

*Virginia M. Maloney, pro se.*

*Clifton H.W. Maloney, pro se.*

*John P. Dooley, pro se.*

*Michael C. Dooley, pro se.*

*Sarah E. Herz, pro se.*

*Andrew T. Herz, pro se.*

*Arthur R. Robb, Jr. and Christine Bosher, as Co-Executors of the Estate of Ralph G. Bosher, Deceased, pro se.*

*HPB Enterprises, a North Carolina General Partnership.*

Jolly, Judge.

I.

PROCEDURAL BACKGROUND

[1]     This civil action involves disputes between the parties arising from the acquisition, ownership and development of land in Perquimans County, North Carolina, for a resort residential, golf and marina community known as Albemarle Plantation.[1]  At times material, Albemarle Plantation was owned by Defendant HPB Enterprises ("HPB"), which is a North Carolina General Partnership.

[2]     On April 2, 2007, Plaintiff EHP Land Co., Inc. ("EHP"), filed its Complaint in this matter.  The Complaint alleges seven claims for relief ("Claim(s)"): First Claim for Relief (Breach of Contract – General Partnership Agreement); Second Claim for Relief (Dissolution – General Partnership Agreement); Third Claim for Relief

---

[1] On January 11, 2008, the court entered a Consent Order for Appointment of Manager, pursuant to which N. Hunter Wyche, Esq. was appointed manager (the "Manager") of HPB.  On May 12, 2008, the Manager filed, under seal, a motion seeking court approval of sale of Albemarle Plantation to a third party.  By Order dated June 12, 2008, the court allowed this motion and authorized the sale of Albemarle lantation.  The property ultimately was sold.  The sale is not relevant to the instant issues.

(Dissolution – General Partnership Agreement);[2] Fourth Claim for Relief (Dissolution –

North Carolina Uniform Partnership Act); Fifth Claim for Relief (Dissolution – General

Partnership Agreement/Assignment); Sixth Claim for Relief (Breach of Contract – Phase

II Contract) and Seventh Claim for Relief (Declaratory Judgment – N.C. Gen. Stat. § 1-

253).

[3]    Defendants have answered timely and raised certain affirmative defenses

and counterclaims, and there has been extensive motion practice undertaken by the

various parties to this action.[3]

[4]    On June 26, 2008, EHP filed the Motion relative to its Fourth and Seventh

Claims.

[5]    The court has heard oral argument on the Motion, and it is ripe for

determination.[4]

[6]    Unless otherwise indicated herein, the material facts reflected in

paragraphs 7 through 31 of this Order exist, are undisputed[5] and are pertinent to the

issues raised by the Motion.

II.

FACTUAL BACKGROUND

---

[2]This Claim is stated in the alternative to the Second Claim.
[3] The counterclaiming Defendants subsequently dismissed, without prejudice, their Second, Third, Fourth and Fifth Counterclaims.
[4] The Defendants argue that the Motion is not ripe because discovery has not been completed.  However, the evidence proffered on the issues raised by the Motion has included affidavits or testimony from most of the principals involved in this controversy, and the Motion has been fully briefed and argued.  The various parties have had sufficient time to conduct any desired discovery relative to the Motion, and the court's ruling on the Motion arises from clear rules of contractual construction.  Consequently, the court concludes that neither party will be unfairly prejudiced by the court's going forward at this time with a ruling on the Motion.
[5] It is not proper for a trial court to make findings of fact in determining a motion for summary judgment under Rule 56.  However, it is appropriate for a Rule 56 ruling to reflect material facts that the court concludes exist and are not disputed, and which support the legal conclusions with regard to summary judgment.  *Hyde Ins. Agency v. Dixie Leasing*, 26 N.C. App. 138, 142 (1975).

[7]     On or about July 22, 1987, Nathan S. Hurdle ("Hurdle"); EHP; Ralph George Bosher ("Ralph Bosher") and Ralph Bosher's children, Robert M. Bosher ("Bo Bosher"), Virginia W. Bosher ("Ginny Bosher"), Carolyn Bosher Maloney ("Carolyn Bosher") and Christina Bosher Herz ("Christina Bosher"),[6] executed a written general partnership agreement (the "Partnership Agreement"), by which they (collectively, the "Partners") formed and intended to operate HPB as a North Carolina general partnership (the "Partnership").[7]

[8]     The Partnership Agreement was amended pursuant to written amendments dated January 8, 1990; March 27, 1991 and May 18, 1993.[8]

[9]     At the time of execution of the Partnership Agreement in 1987, the primary asset of the Partnership consisted of approximately 750 acres of undeveloped land in Perquimans County.  Over the years that followed, HPB successfully developed Albemarle Plantation.[9]

[10]    In 1991, Hurdle withdrew from HPB and his interest was divided among the remaining partners.[10]  In May 2001, Ralph Bosher assigned his remaining ownership interest in HPB to his children and to some extended family members.[11]

[11]    As a result of Ralph Bosher's poor health beginning in the late 1990's, EHP took over primary management of the Partnership, including the marketing and sale of Albemarle Plantation's lots, condominiums and single family homes.[12]

---

[6] For purposes of the Motion, Bo Bosher, Ginny Bosher, Carolyn Bosher and Christina Bosher also may be referred to collectively as the "Bosher Partners".
[7] Am. Countercls. ¶ 18.
[8] *Id.* at ¶ 20.
[9] *Id.* at ¶¶ 18-19.
[10] *Id.* at ¶ 21.
[11] Ralph Bosher assigned a .25% interest in HPB to each of his sons-in-law, daughters-in-law, and grandchildren.  *Id.* at ¶¶ 23-24.
[12] *Id.* at ¶¶ 25-26.

[12]     On October 25, 2005, EHP gave HPB notice of its intent to withdraw from the Partnership ("Notice of Withdrawal"), effective December 31, 2005.[13]

[13]     Under Section 11 of the Partnership Agreement, upon withdrawal of a partner, the remaining partners may either terminate the Partnership or purchase the withdrawing partner's interest in the Partnership.[14]

[14]     By letter dated October 27, 2005, the Bosher Partners accepted EHP's withdrawal and elected to purchase EHP's Partnership interest and to continue the Partnership as a going concern.[15]

[15]     Section 11 of the Partnership Agreement further provides that "[i]f the remaining partners (or any of them) elect to purchase the withdrawing partner's interest, the value of the interest of a withdrawing partner shall be as stated in Section 13 herein and payment of the amount due to the withdrawing partner shall be made in cash in equal quarterly installments . . . ."[16]

[16]     Section 13 of the Partnership Agreement provides that the value of a withdrawing partner's interest shall be:

> the book value thereof, as it appears upon the books and records of the partnership as of the close of business on the effective date of withdrawal, (with the date of such evaluation hereinafter referred to as "the effective date"), as adjusted by substituting the fair market value as of such date, in place of book value, of any *inventory* owned by the partnership. Such book value, adjusted as herein provided, shall be computed by the certified public accountant regularly employed by the partnership, in accordance with the accounting practices regularly followed by the partnership, and in cases not covered by such practices in accordance with standard accounting practice. . . . In making the

---

[13] *Id.* at ¶ 27.
[14] Compl. Ex. A.
[15] Am. Countercls. ¶¶ 28-29.
[16] Compl. Ex. A.

adjustment for the fair market value of inventory, the accountant shall rely on and use the written appraisal of an appraiser selected by the accountant for that purpose, with the approval of and at the expense of the partnership.[17]

(emphasis added).

[17]    The term "inventory" is not defined in the Partnership Agreement.[18]

[18]    Pursuant to Section 13 of the Partnership Agreement, the parties retained an appraiser to appraise the value of the real property of the Partnership as of the effective date of EHP's withdrawal, December 31, 2005.[19]

[19]    During the appraisal process, a dispute arose between the parties as to what the term "inventory" means in the context of Section 13 of the Partnership Agreement and what the appraiser was to appraise pursuant to that provision.[20]   That dispute ultimately led to this civil action.

[20]    At times material, the HPB property comprising the entirety of Albemarle Plantation consisted of two phases: (a) Phase I, the property south of Holiday Island Road, including a golf course, pools, a marina, a fitness center, a sewer and utility plant, condominiums and land developed and actually offered for sale as residential lots; and (b) Phase II, undeveloped land north of Holiday Island Road, which was contemplated ultimately to be developed and offered for sale as residential lots.[21]

[21]    EHP contends that "inventory" includes all developed and undeveloped real property owned by the Partnership, as well as development amenities such as the

---

[17] *Id.*
[18] *Id.*
[19] *Id.*
[20] Am. Countercls. ¶ 34.
[21] There has been no forecast of evidence that the Phase II land was contemplated to be used for any other purposes.

golf course, pro shop, clubhouse, restaurant and marina. EHP's argument would embrace all Phase I and Phase II properties.[22]

[22] The Bosher Partners contend that "inventory" includes only Phase I land and improvements developed at that time and offered for sale by the Partnership as condominiums or residential lots. They contend that the term does not include Phase I development amenities or Phase II undeveloped land owned by the Partnership.[23]

[23] The deposition testimony and affidavits of record establish that the respective Partners, at the time the Partnership Agreement was drafted and signed, did not focus upon or reach a clear understanding or definition of what the word "inventory" would mean, as it is used in Section 13 of the Partnership Agreement.

[24] For example, Christina Bosher stated in her Affidavit that "[she] was not involved in any discussions at the time the Partnership Agreement was signed regarding the meaning of the word 'inventory' or what it included. [She] had no understanding whatsoever what that term was supposed to mean. To [her] knowledge, [her] siblings also did not have any understanding as to what the word 'inventory' meant at that time."[24]

[25] However, Christina Bosher further stated in her Affidavit that, although she had no clear understanding as to what "inventory" meant, her understanding of the Partnership Agreement was that EHP, upon withdrawal, should receive an amount equal to twenty-five percent (25%) of the fair market value of all of the Partnership's assets.[25]

---

[22] Pl's. Mem. Supp. Mot. Summ. J. Fourth and Seventh Claims Relief 6.
[23] *Id.* at ¶¶ 35-36.
[24] Christina Bosher Aff. ¶ 6.
[25] *Id.* at ¶ 9.

[26]     Bo Bosher likewise testified that, at the time he signed the Partnership Agreement, he had had no discussions with any attorneys or with his siblings concerning the terms or content of the Agreement.[26]  Prior to EHP's withdrawal, he had never discussed with his siblings how much a withdrawing partner would be entitled to be paid for his interest under the Agreement, and did not even know the word "inventory" was included in the Agreement.[27]

[27]     Ginny Bosher similarly testified that she did "not recall" any discussions with the other parties to the Partnership Agreement concerning the term "inventory" prior to EHP's withdrawal.[28]

[28]     After EHP's Notice of Withdrawal, Ginny Bosher undertook efforts to determine what "inventory" meant and what the Partners had intended by this term. She first contacted Art Robb ("Robb"), the certified public accountant regularly employed by HPB until 2007.  Robb told her that "he was going to let the lawyers work [the meaning of inventory] out."[29]

[29]     Robb stated in his Affidavit that "inventory" was not mentioned or discussed until after EHP's Notice of Withdrawal.[30]

[30]     Ginny Bosher asked Robb to contact J. Fred Riley, Esq. ("Riley"), the attorney for HPB who had drafted the Partnership Agreement in 1987, for Riley's "take" on "what inventory means."  With respect to the negotiation and drafting of the Partnership Agreement, Riley stated that "none of the partners appeared or gathered together to negotiate the terms of the Partnership Agreement."  Rather, the Partnership

---

[26] Bo Bosher Dep. 49.
[27] *Id.* at 54-55.
[28] Ginny Bosher Dep. 76.
[29] *Id.* at 195.
[30] Robb Aff. ¶ 5.

Agreement was a "standard, 'cookie-cutter' Partnership Agreement that [Riley] used for partnerships at that time."[31]

[31]    In contrast, other Partners testified that they understood "inventory" to mean only the assets available for sale, not including undeveloped property.[32]

III.

PLAINTIFF'S MOTION – THE PARTIES' CONTENTIONS

[32]    Based on the proffered evidence that the parties did not specifically discuss or agree upon the meaning of the term "inventory" as used in the Partnership Agreement, EHP contends that as a matter of law either (a) there was no meeting of the minds by the respective Partners in HPB as to the term "inventory," or (b) in the alternative the term is too ambiguous to be enforced.  Therefore, EHP argues, because Sections 11 and 13 of the Partnership Agreement incorporate and rely on the term "inventory," they are unenforceable.  Plaintiff contends that in the absence of an enforceable provision in the Partnership Agreement governing the procedures for withdrawal by EHP from the Partnership, the North Carolina Uniform Partnership Act ("UPA") controls, and dissolution of HPB is required by G.S. 59-59.[33]

---

[31] *Id.* at 195-96.

[32] For example, Phil Upton testified that "the logical conclusion for [him] on what inventory is is what you have that you're selling to people, which is homesites ad condominiums."  Phil Upton Dep. at 182.  Bo Bosher likewise testified that inventory to him meant "everything on the shelf that's for sale."  Bo Bosher Dep. at 60.  However, Bo Bosher also signed a letter dated January 20, 2005, which Phil Upton drafted, proposing that EHP's interest upon withdrawal be determined by an appraisal of all the assets of Phase I (including the sewer plant).  *See* Bo Bosher Dep. Ex. 5; Phil Upton Dep. 190.

[33] Plaintiff's Second, Third and Fifth Claims in substance rest upon the same contentions with regard to enforceability of Sections 11 and 13 of the Partnership Agreement.

[33]     Consequently, Plaintiff argues that its Fourth Claim (for judicial dissolution of HPB based on EHP's withdrawal) and Seventh Claim (for declaratory judgment) should be granted as a matter of law. [34]

[34]     On the other hand, Defendants contend that (a) EHP has no standing to seek dissolution of HPB because it no longer is a Partner of HPB and (b) the issue of standing aside, there exist material issues of fact with regard to the definition of "inventory" in the Partnership Agreement and that the Motion therefore should be denied.[35]

A.

DISCUSSION

1.

Applicable Law

[35]     Under Rule 56(c), summary judgment is to be rendered "forthwith" if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that upon the forecast of evidence there exists no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law. *Grayson v. High Point Dev. Ltd. P'ship*, 175 N.C. App. 786, 788 (2006). The court views the evidence in the light most favorable to the nonmoving party. *Bruce-Terminix Co. v. Zurich Ins. Co.*, 130 N.C. App. 729, 733 (1998).

[36]     The court first will consider Defendants' threshold procedural defense with regard to the issue of standing.

---

[34] EHP's Second, Third, Fourth, Fifth and Seventh Claims also seek judicial dissolution of HPB and related relief on other grounds, such as breach of the Partnership contract and conduct that makes it impracticable to carry on a business relationship. The instant Motion does not address those alternate contentions. Rather, the Motion only seeks summary judgment on the grounds considered in this Order.
[35] Defs.' Resp. Pl's. Mot. Summ. J. Fourth and Seventh Claims Relief 4-5, 6.

2.

<u>Standing</u>

[37]     A party must have standing to assert a claim in order to invoke the subject matter jurisdiction of this court.  *See Estate of Apple v. Commercial Courier Express, Inc.,* 168 N.C. App. 175, 177, *disc. rev. denied,* 359 N.C. 632 (2005).  The question of standing is jurisdictional and may be raised at any time.  *Crouse v. Mineo*, 189 N.C. App. 232, 236 (2008).

[38]     Defendants argue that EHP does not have standing to seek dissolution of HPB because EHP voluntarily withdrew from the Partnership, and it may not thereafter seek judicial dissolution under G.S. 59-62 (providing that the only persons with standing to seek judicial dissolution are a partner and a purchaser of a partner's interest).

[39]     Plaintiff argues that it is not seeking dissolution pursuant to G.S. 59-62, as argued by Defendants.  Rather, it contends it is proceeding under G.S. 59-59, which provides that a partnership is dissolved by any "partner ceasing to be associated in the carrying on . . . of the business."  Consequently, EHP argues that even if its withdrawal were to be deemed ineffective under the Partnership Agreement, it would have standing to proceed under G.S. 59-59. Plaintiff argues that Sections 11 and 13 of the Partnership Agreement are unenforceable, that the provisions of G.S. 59-59 are applicable and that it has standing to state its Claims in this action.

[40]     The court concludes that for purposes of the Motion, Plaintiff EHP either (a) withdrew from the Partnership as provided by the Partnership Agreement, or (b) its leaving the business relationship with the Partners arguably may have brought about a

dissolution under G.S. 59-59.  Under either scenario, EHP has standing to propound its arguments arising under its Fourth and Seventh Claims.

3.

Plaintiff's Fourth and Seventh Claims

[41]    In substance, the issue before the court is simple.  It is whether there exist any genuine issues of material fact with regard to the meaning of the term "inventory" as it is used in the Partnership Agreement.

[42]    Plaintiff EHP argues that the parties did not discuss, did not negotiate and did not understand the meaning of the term "inventory" as it is used in the Partnership Agreement to determine the value of a withdrawing Partner's share in the Partnership. Further, EHP contends that evidence that the various Partners' ideas, if any, as to what "inventory" meant were different establishes that there was no meeting of the minds as to the term "inventory."  Alternatively, EHP argues that the term "inventory" is so ambiguous that Sections 11 and 13 of the Partnership Agreement are unenforceable. Consequently, EHP argues, that there exists no enforceable provision in the Partnership Agreement governing the procedures for withdrawal of a Partner, and that the default provisions of the UPA control.

[43]    Because G.S. 59-59 requires dissolution of a partnership upon the withdrawal of a partner, in the absence of an appropriate agreement between the partners, EHP contends it is entitled to a judicial declaration that HPB was dissolved by EHP's withdrawal.[36]

_____

[36] In substance, EHP's goal is to have the value of its interest in HPB based on the value of all HPB assets.

[44]    The responding Defendants contend to the contrary. In substance, they argue that there exist genuine issues of material fact with regard to the meaning of "inventory" in the Partnership Agreement, that this presents an issue for the trier of fact and that Plaintiff's Claims are not appropriate for summary judgment.

[45]    Defendants argue that in North Carolina, where there is only one "reasonable interpretation" of a term, the term is plain and the contract is enforced according to that reasonable interpretation. Further, that where there is more than one "reasonable interpretation" of a material contractual provision, ambiguity may exist, but is not fatal. Defendants contend that in such instances, the court can look to extrinsic evidence to see which reasonable interpretation the parties intended. Among others, they rely upon *Whirlpool Corp. v. Dailey Constr., Inc.*, 110 N.C. App. 468, 471 (1993).

[46]    Defendants argue therefore, that determination of what is meant by the word "inventory" in the Partnership Agreement should be made by the ultimate trier of fact based upon evidentiary showings, and that summary judgment is not appropriate.

[47]    The court is not persuaded by the arguments of either the Plaintiff or the responding Defendants.

[48]    The fact that a term in a contract was not specifically discussed by the parties to the agreement does not lead necessarily to a conclusion that the term cannot be defined by the court, or that the provision is void. *See Kroger Ltd. P'Ship v. Guastello*, 177 N.C. App. 386, 389-93 (2006) (where the court interpreted the meaning of the disputed term "building" in a lease agreement).

[49]    Rather, our courts routinely and properly use customary rules of construction in determining the natural and ordinary meaning of disputed contractual

provisions. Unless there is an ambiguity on the face of the agreement that is not susceptible to reasonable construction, a determination by the court is proper. *See Piedmont Bank and Trust Co. v. Stevenson*, 79 N.C. App. 236, 240 (1986); *see also Charlotte Hous. Auth. v. Fleming*, 123 N.C. App. 511, 514 (1996) (construing the word "guest" in a lease); *E.L. Scott Roofing Co. v. State of N.C.*, 82 N.C. App. 216, 223 (1986).

[50]    It is not uncommon for contracts to be form-based and not created from "scratch." Indeed, one reason the use of form contracts is beneficial is because terms may acquire meaning from continual use over time. The very fact that the term "inventory" appears in the Partnership Agreement weighs in favor of according it specific meaning; that is, the term was chosen not haphazardly without thinking, but was chosen for inclusion in a form contract precisely because it carries meaning.

[51]    It is not fatal to a contract that some of its signatories later disagree as to what a material term "means" or argue that the term is susceptible to different "meanings." Instead, in North Carolina "[t]he heart of a contract is the intention of the parties, which is to be ascertained from the expressions used, the subject matter, the end in view, the purpose sought, and the situation of the parties at the time." *Elec. Co. v. Ins. Co.*, 229 N.C. 518, 520 (1948). Where there is only one "reasonable interpretation" of a contractual term, the term is plain and the contract is enforced according to that reasonable interpretation. *Whirlpool Corp.,* 110 N.C. App. at 471; *Klein v. Avemco Ins. Co.,* 289 N.C. 63, 66 (1975).

[52]    In determining whether a contractual provision is susceptible to definition on the face of the agreement, the court should look to the natural and ordinary meaning

of words.  With regard to the instant matter there are numerous sources that can assist the court in this effort.  Black's Law Dictionary defines "inventory" as "raw materials or goods in stock."  BLACK'S LAW DICTIONARY 902 (9th ed. 2009).  Webster's Third New International Dictionary defines "inventory" as "*raw materials*, supplies, *work in process*, and *finished goods* on hand as of a given date," and as "goods or materials accumulated against *future needs.*"  (emphasis added).  WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1189 (3d ed. 2002).  The North Carolina Uniform Commercial Code ("UCC"), at G.S. 25-9-102 (48)(b) and (d) defines "inventory" as goods which "*are held . . . for sale*" and "consist of *raw materials*, *work in process*, or materials used or consumed in a business." [37]  (emphasis added).

[53]    In the instant case, it is undisputed that HPB holds the unsold and developed lots and condominium units in Phase I for future sale.  It also is undisputed that HPB holds the undeveloped land in Phase II for future development and sale.  The business of HPB is and always has been the development and sale of Albemarle Plantation residential lots and condominiums.  The court is forced to conclude that both unsold developed lots and condominiums in Phase I and the undeveloped land in Phase II of Albemarle Plantation constitute "inventory" for purposes of Sections 11 and 13 of the Partnership Agreement.

[54]    The forecast of undisputed evidence does not support Plaintiff's contentions that (a) there was no meeting of the minds between the Partners with regard to material provisions of the Partnership Agreement or (b) that the Partnership Agreement is unenforceable because of hopeless ambiguity.

---

[37] The UCC deals with "goods" and not real property.  However, the "inventory" concept is the same in either instance, and the UCC provision is instructive.

[55]    Accordingly, the court CONCLUDES that there exist no genuine issues of material fact with regard to the definition of the word "inventory" for purposes of Sections 11 and 13 of the Partnership Agreement, and that both unsold developed lots and condominiums in Phase I and the undeveloped land in Phase II of Albemarle Plantation constitute "inventory" for such purposes.  Accordingly, Plaintiff is entitled to appropriate summary judgment in its favor with regard to paragraphs 132, 138 and 139 of its Seventh Claim, as to which the Plaintiff's Motion should be GRANTED.  With regard to the remaining allegations of Plaintiff's Seventh Claim, there exist genuine issues of material fact, and the Motion should be DENIED.

[56]    The court further CONCLUDES that there exist no genuine issues of material fact with regard to Plaintiff's contentions that there was no meeting of the minds between the Partners with regard to material provisions of the Partnership Agreement or that the Partnership Agreement is unenforceable because of hopeless ambiguity. Rather, the forecast of evidence does not support Plaintiff's allegations in this regard.

[57]    Accordingly, Plaintiff is not entitled to summary judgment in its favor with regard to Plaintiff's Fourth Claim, and as to it the Motion should be DENIED.

IV.

THE REMAINING MOTIONS

A.

Plaintiff's Motion for Judgment on the Pleadings

[58]    Plaintiff's Motion for Judgment on the Pleadings seeks dismissal as to all of Defendants' counterclaims ("Counterclaims"), pursuant to Rules 12(c), 12(b)(6) and 12(b)(7).

[59]     Defendants subsequently voluntarily dismissed their Second, Third, Fourth and Fifth Counterclaims ("Dismissed Counterclaims").  Accordingly, as to the Dismissed Counterclaims, Plaintiff's Motion for Judgment on the Pleadings is MOOT and should be DENIED.

[60]     The court CONCLUDES that Defendants' First Counterclaim (Declaratory Judgment) states a claim upon which relief can be granted, and Plaintiff's Motion for Judgment on the Pleadings as to the First Counterclaim should be DENIED.

B.

Defendants' Motion to Dismiss

[61]     Defendants' Motion to Dismiss seeks dismissal of Plaintiff's First through Sixth Claims, pursuant to Rule 12(b)(6).

[62]     Dismissal of an action pursuant to Rule 12(b)(6) is appropriate when the complaint fails to state a claim upon which relief can be granted.  In deciding a Rule 12(b)(6) motion, the well-pleaded allegations of the complaint are taken as true and admitted, but conclusions of law or unwarranted deductions of facts are not admitted. *Sutton v. Duke*, 277 N.C. 94, 98 (1970).

[63]     A complaint fails to state a claim upon which relief can be granted when either (a) the complaint on its face reveals that no law supports the plaintiff's claim, (b) the complaint on its face reveals the absence of facts sufficient to make a good claim or (c) some fact disclosed in the complaint necessarily defeats the plaintiff's claim. *Jackson v. Bumgardner*, 318 N.C. 172, 175 (1986).

[64]     However, a complaint should not be dismissed for failure to state a claim upon which relief can be granted unless it (a) does not give sufficient notice to the

defendant of the nature and basis of the plaintiff's claim or (b) appears beyond a reasonable doubt that the plaintiff could not prove any set of facts in support of his claim that would entitle him to relief. *Sutton v. Duke*, 277 N.C. at 108.

[65]     When a Rule 12(b)(6) motion is denied, by subsequently utilizing discovery a moving defendant may be able to ascertain more precisely the details of plaintiff's various claims and whether the plaintiff can prove facts which will entitle plaintiff to have a jury decide the merits of one or more of the stated claims. *Sutton v. Duke*, 277 N.C. at 98.  If there then exists a good faith contention that the plaintiff cannot prove sufficient facts as to any such claim, the defendant may seek relief through good-faith utilization of Rule 56 or other suitable procedural device.

[66]     The court CONCLUDES that Plaintiff has pled sufficient facts to support its First through Sixth Claims, and that Defendants' Motion to Dismiss should be DENIED.

## C.

### Defendants' Motion for Summary Judgment

[67]     Certain Defendants also lodged a Motion for Summary Judgment with regard to all of Plaintiffs Claims.

[68]     With regard to Plaintiff's First Claim and Sixth Claim, there exist genuine issues of material fact, and as to said Claims, the Defendants' Motion for Summary Judgment should be DENIED.

[69]     With regard to Plaintiff's Seventh Claim, this court has ruled that Plaintiff is entitled to summary judgment in its favor with regard to paragraphs 132, 138 and 139 of said Claim, and as to said paragraphs, Defendants' Motion for Summary Judgment

therefore should be DENIED.  With regard to the remaining allegations of said Seventh Claim, there exist genuine issues of material fact, and Defendants' Motion for Summary Judgment likewise should be DENIED.

[70]     Plaintiff's Second Claim is based in substance upon Plaintiff's contention that the position taken by Defendants with regard to the definition of "inventory" constitutes either (a) a breach of the Partnership Agreement or (b) a withdrawal by Defendants of their acceptance of EHP's withdrawal from the Partnership and their corresponding election to purchase EHP's Partnership interest and to continue the Partnership as a going concern.  As a result, Plaintiff contends it is entitled to a decree of dissolution of EHP.[38]  The court CONCLUDES that the forecast of evidence in this matter does not support Plaintiff's allegations with regard to its Second Claim.  Consequently, there exist no genuine issues of material fact with regard to such Claim, and Defendants' Motion for Summary Judgment as to the Second Claim should be GRANTED.

[71]     Plaintiff's Third and Fourth Claims in substance are based upon Plaintiff's contention that either (a) there was no meeting of the minds between the Partners with regard to material provisions of the Partnership Agreement or (b) the Partnership Agreement is unenforceable because of hopeless ambiguity.  As a result, Plaintiff contends that Sections 11 and 13 of the Partnership Agreement are unenforceable and that Plaintiff is entitled to a decree of judicial dissolution.[39]  The court CONCLUDES that the forecast of evidence in this matter does not support Plaintiff's allegations with regard to its Third and Fourth Claims.  Consequently, there exist no genuine issues of material

---

[38] Compl. ¶¶ 96-99.
[39] *Id.* at ¶¶ 100-15.

fact with regard to such Claims, and Defendants' Motion for Summary Judgment as to the Third and Fourth Claims should be GRANTED.

[72] Plaintiff's Fifth Claim is based upon Plaintiff's contention that a brief transfer in 2004 of the Bosher Partners' ownership interests in HPB to an entity known as the Bosher Family LLC constituted such a material breach of the Partnership Agreement that it entitles Plaintiff to a decree of judicial dissolution of HPB.[40] The court CONCLUDES that the forecast of evidence in this matter does not support Plaintiff's allegations with regard to its Fifth Claim. Consequently, there exist no genuine issues of material fact with regard to such Claim, and Defendants' Motion for Summary Judgment as to the Fifth Claim should be GRANTED.

NOW THEREFORE, based upon the foregoing CONCLUSIONS, it is ORDERED, ADJUDGED and DECREED that:

[73] Plaintiff's Motion for Summary Judgment with regard to its Fourth Claim is DENIED.

[74] Plaintiff's Motion for Summary Judgment with regard to paragraphs 132, 138 and 139 of its Seventh Claim is GRANTED, as follows: the definition of the word "inventory" for purposes of Sections 11 and 13 of the Partnership Agreement shall include both unsold developed lots and condominiums in Phase I and the undeveloped land in Phase II of Albemarle Plantation.

[75] With regard to the remaining allegations of Plaintiff's Seventh Claim, the Plaintiff's Motion for Summary Judgment is DENIED.

[76] Plaintiff's Motion for Judgment on the Pleadings as to Defendants' Counterclaims is DENIED.

---

[40] *Id.* at ¶¶ 116-22.

[77]     Defendants' Motion to Dismiss Plaintiff's First through Sixth Claims is DENIED.

[78]     Defendants' Motion for Summary Judgment with regard to Plaintiff's Second, Third, Fourth and Fifth Claims is GRANTED, and said Claims hereby are DISMISSED.

[79]     Defendants' Motion for Summary Judgment with regard to Plaintiff's First, Sixth and Seventh Claims is DENIED.

[80]     The court will hold a status conference relative to this action on Thursday, November 4, 2010, beginning at 11:00 am at the North Carolina Business Court, 225 Hillsborough Street, Suite 303, Raleigh, North Carolina.

This the 5th day of October, 2010.